## JEAN WALZER *v.* JEROME S. WALZER

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued January 5—decision released May 3, 1977

*Kenneth D. Wallace,* for the appellant-appellee (defendant).

*Myra L. Graubard,* for the appellee-appellant (plaintiff).

LONGO, J. This proceeding was commenced by the plaintiff, a California resident, against the defendant, a Connecticut resident, to secure equitable enforcement of an order of the Family Court of New York modifying a divorce decree issued in Idaho and for damages due to the defendant's failure to pay amounts prescribed in the New York order. The Superior Court rendered judgment for the plaintiff in the amount of $13,050, but ruled for the defendant on the plaintiff's claim for prospective equitable enforcement of the New York decree. The defendant appealed from the judgment and the plaintiff cross-appealed.

The defendant and the plaintiff have attacked several of the court's findings. We have considered their claims and have arrived at the following sum-

mary of the relevant facts. The plaintiff and the defendant were married on May 28, 1950, and had three children. They entered into a separation agreement on June 29, 1965, and were granted a divorce in the state of Idaho on August 19, 1965. The court awarded custody of the children to the plaintiff and the separation agreement was incorporated, but not merged, into the divorce decree. The separation agreement and decree provided that the plaintiff should receive $175 per week from the defendant as alimony and for support of the children. The relevant sections of the agreement further provided that during such time as any one of the children was away at camp, school or college at the defendant's expense, married, died, reached the age of twenty-one or finished college, whichever was sooner, the payments should be reduced by $25 per week. At such time as no children were living at home with the plaintiff, she was to be entitled to $100 per week until she remarried or died. The agreement also provided that the defendant would lease to the plaintiff the house he owned for one dollar per year to "be occupied and used solely and exclusively by the wife and children." The defendant further agreed that if, after three years, he sold the house and the wife and children were required to move, he would provide substantially similar accommodations for the wife and children.

In 1970, the plaintiff petitioned the Family Court of the state of New York for modification of the Idaho decree. The defendant appeared, was represented by counsel and testified at the hearing on the petition. The New York court issued an order purporting to modify the Idaho decree. The court ordered the defendant to pay to the plaintiff the sum of $175 per week until the last child married, died or

attained the age of twenty-one, made additional modifications of the original decree relating to the support of the children and provided for payment of $375 per month as rental payments should the plaintiff be forced to move from the house owned by the defendant. The defendant did not appeal the Family Court order, nor did he seek modification of it in New York. The defendant made payments in compliance with the order from September 15, 1971, the date of the order, until March 20, 1973, when he reduced the $175 weekly payments to $100. In February, 1974, after consulting an attorney, the defendant ceased making the $375 per month rental payments.

By complaint dated December 4, 1973, and amended complaint dated January 30, 1974, the plaintiff petitioned the Superior Court of Connecticut for equitable prospective enforcement of the New York order and an award of damages for accrued payments. The Superior Court found that the Idaho decree, as modified by the New York order, was entitled to full faith and credit under Article IV, § 1, of the United States constitution and that it was also enforceable in Connecticut under the doctrine of comity. The court further concluded that the defendant was estopped from raising any defenses which he could have raised in the Family Court of New York proceedings; that he was estopped from claiming that the New York Family Court was without jurisdiction to modify the Idaho divorce decree; and that the defendant was estopped from claiming that the order of the New York Family Court was not enforceable in Connecticut. Based upon these conclusions, the court granted the plaintiff's claim for accrued payments in the amount of $13,050, representing $5250 in back

rent payments and $7800 in back support and alimony payments. The court denied the plaintiff's claim for prospective enforcement.

Article IV, § 1, of the United States constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." Congress by the act of May 26, 1790, chapter 11, as amended, R.S. § 905, 28 U.S.C. § 687, has prescribed that judgments "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." Actions to enforce orders for the payment of alimony and support have produced a considerable amount of full faith and credit litigation. In the leading case of *Sistare* v. *Sistare,* 218 U.S. 1, 30 S. Ct. 682, 54 L. Ed. 905, the Supreme Court held that a Connecticut court was required to render judgment for accrued alimony payments originally ordered under a New York separation decree. This court had held that that judgment should not enter since it read New York law as making alimony decrees modifiable and, therefore, not final orders commanding full faith and credit from the courts of this state. *Sistare* v. *Sistare,* 80 Conn. 1, 66 A. 772. The United States Supreme Court did not overturn the constitutional principle laid down by this court, but reversed on the ground that it did not interpret New York law as allowing modification of alimony decrees. This court in *Hendrix* v. *Hendrix,* 160 Conn. 98, 273 A.2d 890, summarized (p. 104) the governing requirements of full faith and credit law as follows:

"Under the full faith and credit clause of the constitution of the United States (article 4 § 1) and its implementing statute . . . the judicial proceedings of a state must be given full faith and credit in every other state. The judgment rendered in one state is entitled to full faith and credit only if it is a final judgment, and the judgment is final only if it is not subject to modification in the state in which it was rendered. *Barber* v. *Barber,* 323 U.S. 77, 65 S. Ct. 137, 89 L. Ed. 82; *Sistare* v. *Sistare,* 218 U.S. 1, 30 S. Ct. 682, 54 L. Ed. 905."[1]

New York, in its Domestic Relations Law, § 236, has expressly reserved in its courts the power to modify the amount of unpaid alimony due. Section 236 states: "Upon the application of either the husband or the wife . . . the court may annul or modify any such direction [for temporary or permanent alimony], whether made by order or by final judgment . . . . [T]he authority granted by the preceding sentence shall extend to unpaid sums or installments accrued prior to the application as well

---

[1] This doctrine, when applied to domestic relations cases, has been severely criticized in two notable opinions. In *Barber* v. *Barber,* 323 U.S. 77, 86, 87, 65 S. Ct. 137, 89 L. Ed. 82, Mr. Justice Jackson, concurring, stated: "Neither the full faith and credit clause of the Constitution nor the Act of Congress implementing it says anything about final judgments or, for that matter, about any judgments. Both require that full faith and credit be given to 'judicial proceedings' without limitation as to finality. Upon recognition of the broad meaning of that term much may some day depend." Mr. Justice Frankfurter, in his concurring opinion in *Halvey* v. *Halvey,* 330 U.S. 610, 616, 67 S. Ct. 903, 91 L. Ed. 1133, also criticized rigid adherence to requirements of finality in according full faith and credit to judgments affecting domestic relations when he stated: "The scope of the Full Faith and Credit Clause is bounded by its underlying policy and not by procedural considerations unrelated to it. Thus, in judgments affecting domestic relations technical questions of 'finality' as to alimony and custody seem to me irrelevant in deciding the respect to be accorded by a State to a valid prior judgment touching custody and alimony rendered by another State." See also *Light* v. *Light,* 12 Ill. 2d 502, 147 N.E.2d 34.

as to sums or installments to become due thereafter." The commentary at 14 McKinney's Consolidated Laws of New York 140 states of this section: "The seventh sentence [of § 236] clarifies that any application (under the sixth sentence) for an amendment or modification of a prior judgment or order directing the paying out of money (this will generally apply where the payments were directed to be made in installments) may be granted retroactively as well as prospectively. Hence arrears under a prior judgment or order are not beyond the reach of the court on an application to modify the prior direction." Further, § 461 of the Family Court Act of New York states in part: "(b) If an order of the supreme court or of another court of competent jurisdiction requires support of the child, the family court may . . . (ii) entertain an application to modify such order on the ground that changed circumstances requires such modification." Section 466 (c) of the Family Court Act also provides for modification of alimony and support orders when it states: "[I]f a court of competent jurisdiction not of the state of New York shall enter an order or decree granting alimony or support in any such action, the family court may . . . (ii) entertain an application to modify the order or decree granting alimony on the ground that there has been a subsequent change of circumstances and that modification is required." The plaintiff in the present proceeding has not taken the final step of reducing the alimony arrearage to a judgment for money owed to her, in which case our ruling might be different. The New York order in question, therefore, clearly does not satisfy the prerequisite of finality required before full faith and credit may be accorded the judgment of a foreign state. See annot., 157 A.L.R. 170, and cases collected therein.

Our determination whether the courts of this state will enforce the New York order, however, does not end with our decision that the full faith and credit clause does not apply. The plaintiff argues that, though we are not compelled by the full faith and credit clause to enforce the order, we may enforce it through comity. *Milwaukee County* v. *M. E. White Co.*, 296 U.S. 268, 56 S. Ct. 229, 80 L. Ed. 220. In the leading case of *Sistare* v. *Sistare,* 80 Conn. 1, 4, 66 A. 772, discussed above, this court, after discussing the New York order in question and establishing that it was subject to modification, stated: "Such being the character of the order before us, as declared by the courts of the jurisdiction from which it comes, the conclusion would seem inevitable, not only that the courts of this State are under no constitutional obligation to give effect to it in the manner here sought, but ought not, as an act of comity, to do so, since it would thus be given a greater effect than would be given to it in the jurisdiction of its origin." Though the *Sistare* decision was subsequently reversed by the United States Supreme Court on the ground that the New York order was not modifiable, its reasoning on the issue of enforcement through comity survived intact and, if still valid, would prevent enforcement of the order before us. We find, however, that the force of the rigid command of *Sistare* has been eroded over time by changes in our society, the policies expressed by our legislature and the constant reexamination to which courts and commentators have subjected it over the past seventy years.[2] As our society has

---

[2] See, for example, *Barber* v. *Barber,* 323 U.S. 77, 86, 65 S. Ct. 137, 89 L. Ed. 82 (concurring opinion by Jackson, J.) ; *Halvey* v. *Halvey,* 330 U.S. 610, 616, 67 S. Ct. 903, 91 L. Ed. 1133 (concurring opinion by Frankfurter, J.) ; Ehrenzweig, "Interstate Recognition of Support Duties," 42 Calif. L. Rev. 382; Scoles, "Enforcement of Foreign

become increasingly mobile and as familial disin-
tegration has increased, the problem of obtaining
interstate enforcement of domestic relations orders
has become acute and has led to a trend toward
greater cooperation among states. This trend has
been recognized in Connecticut and adopted as the
policy of this state by the legislature, which has
enacted General Statutes § 17-327 through General
Statutes § 17-355b, popularly known as the Uniform
Reciprocal Enforcement of Support Act. It must
be remembered that comity is a flexible doctrine, the
application of which rests in the discretion of the
state where enforcement of a foreign order is
sought. Because comity is a flexible doctrine, its
contents are peculiarly subject to the dictates of
public policy and considerations of fairness to liti-
gants. We adhere to the principle enunciated by
this court in *Sistare* v. *Sistare,* supra, that the doc-
trine of comity should not be employed to afford
a foreign decree greater effect in this state than it
would merit in the state of its origin. We carry
that court's reasoning one step further, however,
and hold not that the rule flatly prevents enforce-
ment of the New York order in Connecticut, but that
it allows the courts of this state to give effect to the
New York order after affording the defendant an
opportunity to raise and litigate any questions of
modification that could have been raised had
enforcement been sought in the courts of the state
of New York. That this court is free to give effect
to and at the same time to modify such orders is
supported by the case of *Halvey* v. *Halvey,* 330

'Non-Final' Alimony and Support Orders," 53 Colum. L. Rev. 817;
comment, "Alimony — Full Faith and Credit — Recognition of
Retroactively Modifiable Foreign Alimony Decrees Denied," 40 Mo.
L. Rev. 335; comment, "According Full Faith and Credit to Foreign
Modifiable Alimony Decrees," 26 U. Chi. L. Rev. 136.

U.S. 610, 615, 67 S. Ct. 903, 91 L. Ed. 1133, in which the Supreme Court, when discussing the power of states to extend full fai'h and credit to modifiable decrees, stated that a state "has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered." Once we decide, however, that a judgment is to be given effect in this state, we are constrained by considerations of due process to give the party against whom enforcement is sought the same opportunity to litigate the question of modification that the party would have been afforded in the state of origin of the order. *Griffin* v. *Griffin,* 327 U.S. 220, 233–34, 66 S. Ct. 556, 90 L. Ed. 635; *Worthley* v. *Worthley,* 44 Cal. 2d 465, 283 P.2d 19. This court has recognized "that a custody decree rendered by a sister state is entitled to full faith and credit provided that the court which rendered the decree had jurisdiction" and provided that the "foreign custody decree can be modified in Connecticut for the same reasons that the decree could be modified in the state wherein it was rendered. *Morrill* v. *Morrill,* 83 Conn. 479, 492, 77 A. 1." *Miller* v. *Miller,* 158 Conn. 217, 220–21, 258 A.2d 89, cert. denied, 396 U.S. 940, 90 S. Ct. 374, 24 L. Ed. 2d 241; *Ogles* v. *Warren,* 148 Conn. 255, 170 A.2d 140. Though we recognize distinctions between custody adjudications and support orders,[3] we find the ratio decidendi of the custody cases applicable to alimony and support proceedings. Further, we are persuaded by considerations of policy to extend comity to modifiable support orders of foreign states. As stated above, our legislature, by enacting the Uniform Reciprocal Enforcement of Support Act,

---

[3] Those distinctions serve, in part, to make custody decrees subject to full faith and credit while modifiable support orders, we today hold, are enforceable only through comity.

expressed its intention that Connecticut courts recognize and enforce foreign alimony and support decrees regardless of whether they are modifiable, but it also recognized that parties against whom enforcement is sought must be afforded an opportunity to be heard on the issue of modification. It would be anomalous for us to reject this policy for proceedings which were not brought under the act and, thereby, to establish two different rules governing the same situation.[4]

We are persuaded also by practical considerations that such orders should be enforceable through comity. These considerations were aptly summarized by the California Supreme Court (Traynor, J.) while discussing a similar factual situation: "Moreover, there is no valid reason, in a case in which both parties are before the court, why the California courts should refuse to hear a plaintiff's prayer for enforcement of a modifiable sister-state decree and the defendant's plea for modification of his obligations thereunder. If the accrued installments are modified retroactively, the judgment for a liquidated sum entered after such modification will be final and thus will be entitled to full faith and credit in all other states. (*Magnolia Petroleum Co.* v. *Hunt*, 320 U.S. 430, 438–439 [64 S. Ct. 208, 88 L. Ed. 149] and cases cited.) If the installments

[4] We are particularly influenced by General Statutes § 17-355 which states: "UNIFORMITY OF INTERPRETATION. This part shall be so interpreted and construed as to effectuate its general purpose to make uniform the laws of the states which enact it." The legislature has expressed its mandate that the purpose of achieving uniformity of law between the states should not be frustrated by the courts. This mandate persuades us that just as the purpose of interstate cooperation should not be frustrated by an uncooperative interpretation of the General Statutes, it should also not be frustrated by a refusal to extend rationally the application of the doctrine of comity to the situation at hand.

are modified prospectively, the issues thus determined will be res judicata so long as the circumstances of the parties remain unchanged. (Citations omitted.) Furthermore, the interests of neither party would be served by requiring the plaintiff to return to the state of rendition and reduce her claim for accrued installments to a money judgment." *Worthley* v. *Worthley,* supra, 473; *Lopez* v. *Avery,* 66 So. 2d 689 (Fla.); Clark, Law of Domestic Relations, § 14.11, pp. 479–480. In the present case, it would be detrimental to the interests of the litigants and the states involved to require the plaintiff to return to New York periodically to pursue repeated suits for accrued installments, reduce her claims to money judgments, and then return to Connecticut to seek enforcement of the New York judgments in our courts.[5]

Since we have determined that comity is to be accorded the judgment of the Family Court of New York, the only issues left for our consideration are those issues which were raised below and could have been raised in an enforcement proceeding in New York, and the issue of the rendering court's jurisdiction, which may generally be raised in a collateral attack. The lower court held that the defendant was prevented by the doctrine of estoppel from attacking the New York court's jurisdiction to modify the Idaho court's decree. The lower court apparently felt that it was not equitable to allow the defendant to challenge the court's jurisdiction to issue a decree which he had obeyed for many months without question. The court may also have acted on the "general rule that a judgment is entitled to full faith and credit — even as to ques-

[5] This procedure would place a particularly onerous burden on the present plaintiff who now lives in California.

tions of jurisdiction — when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee* v. *Duke,* 375 U.S. 106, 111, 84 S. Ct. 242, 11 L. Ed. 2d 186. In stating this rule the Supreme Court has expressly distinguished cases in which it is applicable from those cases like the present one, in which it does not appear that there has been "an actual contest over jurisdiction between the parties." *Stoll* v. *Gottlieb,* 305 U.S. 165, 172, 59 S. Ct. 134, 83 L. Ed. 104. *Halvey* v. *Halvey,* 330 U.S. 610, 614, 67 S. Ct. 903, 91 L. Ed. 1133. Furthermore, because we have decided that the New York order is to be enforced in this state under the doctrine of comity and not under the command of the full faith and credit clause, our leeway to consider jurisdictional claims is broader. We find that it would be unduly restrictive for us to foreclose this avenue of attack to the defendant. It seems particularly inappropriate to invoke an equitable doctrine to penalize the defendant for his temporary acceptance of and compliance with the order of the New York court. We, therefore, turn to the jurisdictional issue. The defendant does not claim that the New York court lacked personal jurisdiction over the parties, but he does contend that the Family Court of New York lacked subject-matter jurisdiction to modify either the separation agreement or the Idaho decree of divorce. We do not agree. The plaintiff petitioned the Family Court for modification under § 466 (c) of the Family Court Act which states, in part: "[I]f a court of competent jurisdiction not of the state of New York shall enter an order or decree granting alimony or support in any such action, the family court may (i) entertain an application to enforce the order or decree granting

alimony, or (ii) entertain an application to modify the order or decree granting alimony on the ground that there has been a subsequent change of circumstances and that modification is required." See *Seitz* v. *Drogheo,* 21 N.Y.2d 181, 234 N.E.2d 209, upholding the jurisdiction of the Family Court to hear petitions under § 466.

Having determined that no legitimate claim was raised in opposition to the jurisdiction of the New York Family Court, it remains for us to determine whether the defendant was given an opportunity to raise the issue of modification in the Connecticut court, which issue would have been open to him in a similar proceeding in New York and, if it was raised, whether the Superior Court ruled correctly on that issue. That the defendant was denied an opportunity to seek modification of the New York order is demonstrated by the court's rulings of law in its conclusions. The court concluded: "The defendant is estopped from raising any defenses which he could have raised in the [New York] Family Court proceedings." The court also over-ruled the defendant's claims that: "The Order entered by the Family Court, Westchester County, State of New York, can be modified or altered or vacated by that court at any time"; and "Any sums otherwise due under an order of the Family Court, Westchester County, State of New York, as arrearages may be cancelled by that Court at any time." Because we have disapproved of the above conclusions of the trial court and because the opportunity to litigate fully and fairly the issue of modification is crucial to the application of the doctrine of comity, which we find decisive of this appeal, we find it necessary to vacate the judgment of the Superior Court in order to allow the defendant to raise

the issue of modification to the extent to which he would be permitted to raise it in an action brought in a New York court to enforce the New York Family Court order. Any other result would violate the governing principle of *Sistare* v. *Sistare*, 80 Conn. 1, 4, 66 A. 772, that no order should "be given a greater effect than would be given to it in the jurisdiction of its origin."[6] (See our discussion of the New York law, supra.)

The defendant has also assigned as error the ruling of the trial court that the memoranda of decisions written by the judge of the New York Family Court who entered the order of which the plaintiff seeks enforcement were not admissible in evidence. The defendant claims that the memoranda were admissible to prove his state of mind at the time he decreased his payments to the plaintiff. He argues that the New York court made statements in its memoranda which were not contained in the order and which justified him in decreasing the payments to his wife. We conclude that the trial court acted properly in excluding the memoranda. When the applicable law of a foreign state is not shown to be otherwise, we presume it to be the same as our own. *Hendrix* v. *Hendrix*, 160 Conn. 98, 109, 273 A.2d 890. Clearly, the memoranda could not be used to contradict the express terms of the order of the court. *Schnier* v. *Commissioner of Transportation*, 172 Conn. 427, 428, 374 A.2d 1087.

---

[6] Because we are giving effect to a foreign state order which is subject to modification in the foreign state, and because we seek to foster uniformity of result between the parties, we find it appropriate that any question of modification should be resolved under the foreign state's law. For an opposing argument, see comment, "According Full Faith and Credit to Foreign Modifiable Alimony Decrees," 26 U. Chi. L. Rev. 136, 147–49.

We have examined the defendant's remaining claims of error and find them without merit. The plaintiff has cross-appealed, assigning as error the conclusion of the trial court that the Idaho decree, as modified by the New York Family Court order, was not entitled to prospective enforcement in this state. In light of our discussion extending comity to foreign retroactively modifiable support and alimony obligations, we are compelled by reason to extend the same principle to foreign modifiable prospective support and alimony orders. The enforcement of such orders must, of course, be tempered by the same considerations of fairness and due process which have compelled us to hold in the case of retroactively modifiable support obligations that they will be enforced only subject to the defendant's right to raise the issue of modification which would be open to him were enforcement sought in the state of origin of the order. *Worthley* v. *Worthley,* 44 Cal. 2d 465, 283 P.2d 19; *Fanchier* v. *Gammill,* 148 Miss. 723, 114 So. 813; *Sackler* v. *Sackler,* 47 So. 2d 292 (Fla.); *McCabe* v. *McCabe,* 210 Md. 308, 123 A.2d 447; annot., 18 A.L.R.2d 862.

There is error, the judgment is vacated and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.