MARY DOE *v.* JOHN ROE ET AL.
(SC 15901)

Callahan, C. J., and Norcott, Katz, Palmer and McDonald, Js.

Argued May 28—officially released September 1, 1998

*William F. Gallagher*, with whom, on the brief, was *Barbara L. Cox* and *Jean L. Welty*, for the appellants (respondents).

*Douglas R. Daniels*, for the appellee (petitioner).

*Penn Rhodeen*, for the minor child.

*Opinion*

PALMER, J. The narrow question presented by this appeal is whether the Superior Court has subject matter jurisdiction to render judgment in accordance with an agreement that includes a promise by a surrogate mother to consent to the termination of her parental rights in Probate Court. The trial court, *Pittman, J.,* rendered judgment in accordance with such an agreement. Subsequently, the trial court, *Alander, J.,*

upon review of the judgment, and after concluding that it purported to terminate the surrogate mother's parental rights, vacated the judgment on the ground that, under the circumstances, the court that had approved the agreement lacked subject matter jurisdiction to do so. Because we conclude that approval of the agreement was within the authority of the Superior Court, we reverse.

The relevant facts and procedural history are undisputed. On January 25, 1994, the petitioner, Mary Doe, signed a surrogacy contract with the named respondent, John Roe, to carry a child fathered by him through artificial insemination. The petitioner further agreed to voluntarily surrender custody of the child to the named respondent and his wife, Jane Roe,[1] upon birth, and to allow for the subsequent adoption of the child by Jane Roe. Jack Roe (child), who was conceived pursuant to this surrogacy contract,[2] was born on December 13, 1994. Immediately after the child's birth, the petitioner turned him over to the respondents in accordance with the parties' surrogacy contract.[3]

On April 10, 1995, when the child was almost four months old, the petitioner filed an application for a writ of habeas corpus seeking custody of the child. On the same day, the petitioner also filed a declaratory judgment action seeking sole guardianship of the child and a determination that the surrogacy contract was void as against public policy and voidable because it was signed under duress and false pretenses. Thereafter, the respondents filed a counterclaim seeking: (1) specific performance of the surrogacy contract; (2) permanent

---

[1] Jane Roe also is a respondent in this action. Accordingly, the Roes hereinafter are referred to collectively as the respondents.

[2] The validity of this surrogacy contract or surrogacy contracts in general is not at issue in this appeal.

[3] The child's older brother had been conceived by the same parties under a similar surrogacy contract and was adopted by Jane Roe in 1994.

custody of the child; and (3) an order enjoining the petitioner from attempting to form a parent-child relationship with the child.

On July 8, 1996, the parties reported to Judge Pittman that they had reached an agreement settling all of the outstanding issues raised by the petitioner's claims and the respondents' counterclaim. The two part agreement (agreement), which the parties filed with the court, consisted of a stipulation and an open adoption and visitation agreement[4] that was incorporated by reference into the stipulation. The agreement provided that the petitioner would execute the documents necessary to terminate her parental rights, thereby enabling Jane Roe to adopt the child.[5] In return, the petitioner would receive: (1) visitation rights with the child;[6] (2) access to information concerning the child; and (3) payment for certain legal and medical expenses. The agreement also provided for confidentiality and joint counseling, and set forth the specific terms of visitation by the petitioner. Moreover, the parties agreed to withdraw all existing legal and administrative proceedings against each other.[7]

Judge Pittman canvassed each of the parties to ascertain "the voluntariness and the fact of everyone's under-

[4] In *Michaud* v. *Wawruck*, 209 Conn. 407, 415–16, 551 A.2d 738 (1988), this court recognized a biological parent's ability to terminate her parental rights while retaining contact with the child and the adoptive family through an "open adoption agreement," provided that such an arrangement is determined to be in the best interests of the child.

[5] We note that when the parties presented the agreement to Judge Pittman, they had already completed the appropriate probate forms for termination of parental rights and stepparent adoption. Specifically, on July 5, 1996, the petitioner had executed a consent to termination of parental rights as part of the application for stepparent adoption and an affidavit of consent to termination of parental rights.

[6] The agreement also provided the petitioner visitation rights with the child's older brother, who had been conceived by the same parties under a previously executed surrogacy contract. See footnote 3 of this opinion.

[7] The petitioner agreed, inter alia, to withdraw another action that she had already commenced against the respondents.

standing the agreement." The colloquy was interrupted when the petitioner indicated that she misunderstood the purported finality of the adoption arrangement.[8] A discussion followed regarding whether the petitioner could seek to reopen the adoption in Probate Court if the respondents breached the agreement. Judge Pittman called a recess so the parties could clarify that the adoption of the child would become final after it was ordered by the Probate Court. Following the recess, Judge Pittman renewed her canvass of the parties regarding their understanding of all aspects of the agreement. Judge Pittman, satisfied that the parties understood the implications of the agreement, rendered judgment[9] in accordance with it, and confirmed the respondents' continued custody of the child.[10] The following day, July 9, 1996, the respondents filed an application in Probate Court for stepparent adoption of the child.

On March 4, 1997, the respondents filed a motion in Superior Court, seeking to hold the petitioner in contempt for failing to comply with certain terms of the agreement. The respondents claimed that the petitioner had violated provisions of the agreement relating to custody and visitation, and that she had attempted to revoke her consent to the termination of her parental rights, also in breach of the agreement. With respect

---

[8] The transcript reveals the following pertinent colloquy:

"The Court: But, rather than continue the controversy through the court, this is an acceptable resolution to you?

"[Petitioner]: Yes, for now.

"The Court: Well, I need to know more than for now.

"[Petitioner]: Until next year when it's reviewed again.

"The Court: Because, this appears to conclude and foreclose the possibility for requesting a review of the—what will be a formalized adoption for [the child] and a custodial arrangement, which would certainly appear not to be one that can be opened and redone. . . ."

[9] We hereinafter refer to this judgment as the 1996 judgment.

[10] The respondents have retained custody of the child since the child's birth.

to the termination issue, the respondents sought an order from the court directing the petitioner to affirm her consent to the termination of her parental rights and enjoining her from contesting the termination proceedings.

On May 27, 1997, the petitioner filed a motion to dismiss the case for lack of subject matter jurisdiction. She claimed that, by rendering the 1996 judgment relating to the execution of termination documents, Judge Pittman, in effect, had sought to terminate her parental rights. Relying on *Hao Thi Popp* v. *Lucas*, 182 Conn. 545, 549–50, 438 A.2d 755 (1980), the petitioner asserted that the trial court, *Pittman, J.*, lacked jurisdiction to render the 1996 judgment.

Judge Alander held a hearing on the motion to dismiss on June 9, 1997. At the hearing, the respondents withdrew that portion of their contempt motion that sought an order requiring the petitioner to consent to the termination of her parental rights. The respondents, however, pressed their motion insofar as it sought enforcement of the provisions of the agreement relating to custody and visitation. Judge Alander concluded that Judge Pittman, in rendering the 1996 judgment, had intended to finalize the termination of the petitioner's parental rights, a matter over which the Superior Court, under the circumstances, lacked subject matter jurisdiction. Although it is undisputed that the custody and visitation issues were within the jurisdiction of the Superior Court, Judge Alander also declined to enforce those provisions of the agreement on the ground that they could not be severed from the provisions dealing with the termination of the petitioner's parental rights. The custody and visitation provisions, Judge Alander stated, were "afterthought[s]" to an agreement concerned primarily with termination and adoption. Consequently,

Judge Alander denied the respondents' motion for contempt and vacated the 1996 judgment in its entirety.[11]

The respondents appealed to the Appellate Court from the judgment of the trial court, *Alander, J.*, vacating the 1996 judgment. We transferred the appeal to this court pursuant to Practice Book § 4023, now Practice Book § 65-1, and General Statutes § 51-199 (c).

On appeal, the respondents and the child's attorney claim, first, that the trial court, *Pittman, J.*, had jurisdiction to render a judgment incorporating an executory agreement to terminate parental rights and to undertake adoption proceedings in the Probate Court. Accordingly, they ask this court to fully reinstate the 1996 judgment. Alternatively, the respondents claim that, even if the trial court, *Pittman, J.*, did not have jurisdiction to render a judgment incorporating the parties' agreement regarding the termination of the petitioner's parental rights, the custody and visitation provisions of the agreement were severable from the termination provisions and, therefore, within the jurisdiction of the trial court, *Pittman, J.* As to those portions of the 1996 judgment, the respondents claim that General Statutes § 52-212a[12] prevents the petitioner from opening or setting aside the 1996 judgment because more than four months have elapsed since it was rendered. Consequently, in the event that we affirm Judge Alander's decision to vacate the portions of the agreement relating to the termination of parental rights, the respondents seek reversal of Judge Alander's decision with respect

[11] Judge Alander also ordered, however, that the child remain in the custody of the respondents under the previous pendente lite orders; see footnote 10 of this opinion; and ordered the petitioner's "visitation . . . suspended until further order of the court."

[12] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed."

to the those portions of the agreement dealing with custody and visitation.

The petitioner counters that Judge Alander properly vacated the 1996 judgment. Specifically, she asserts, and the respondents do not contest, that there are two, and only two, statutorily authorized vehicles for terminating parental rights, namely: (1) a petition to the Probate Court pursuant to General Statutes (Rev. to 1995) § 45a-715, as amended by Public Acts 1995, No. 95-349, § 4;[13] and (2) a direct petition to the Superior Court on behalf of a child in the custody of the commissioner of children and families pursuant to General Statutes (Rev. to 1995) § 17a-112, as amended by Public Acts 1995, No. 95-238, § 3.[14] See *Hao Thi Popp* v. *Lucas*, supra,

[13] General Statutes (Rev. to 1995) § 45a-715 (a), as amended by Public Acts 1995, No. 95-349, § 4, provides: "Any of the following persons may petition the court of probate to terminate parental rights of all persons who may have parental rights regarding any minor child or for the termination of parental rights of only one parent provided the application so states: (1) Either or both parents, including a parent who is a minor; (2) the guardian of the child; (3) the selectmen of any town having charge of any foundling child; (4) a duly authorized officer of any child care facility or child-placing agency or organization or any children's home or similar institution approved by the commissioner of children and families; (5) a blood relative of the child, descended from a common ancestor not more than three generations removed from the child, if the parent or parents have abandoned or deserted the child; (6) the commissioner of children and families, provided the custodial parent of such minor child has consented to the termination of parental rights and the child has not been committed to the commissioner, and no application for commitment has been made; provided in any case hereunder where the minor child with respect to whom the petition is brought has attained the age of twelve, the minor child shall join in the petition."

General Statutes (Rev. to 1995) § 45a-715 (e), as amended by Public Acts 1995, No. 95-349, § 4, provides in relevant part: "A petition under this section shall be filed in the court of probate for the district in which the petitioner or the child resides or, in the case of a minor who is under the guardianship of any child care facility or child-placing agency, in the court of probate for the district in which the main office or any local office of the agency is located."

Subsections (a) and (e) of § 45a-715 were subsequently amended by Public Acts 1996, No. 96-130, § 5. Those amendments are not relevant to this appeal.

[14] General Statutes (Rev. to 1995) § 17a-112 (a) provides in relevant part: "In respect to any child committed to the commissioner of children and

182 Conn. 550.[15] She argues, further, that because an integral part of the 1996 judgment purported to effectuate a termination of parental rights, and because that termination was not effectuated pursuant to either one of the two statutorily authorized vehicles, the trial court, *Pittman, J.*, lacked subject matter jurisdiction to effect such a termination.

We conclude that the 1996 judgment incorporating the parties' agreement did not terminate the petitioner's parental rights and, accordingly, the trial court, *Pittman, J.*, did not lack subject matter jurisdiction to render the 1996 judgment. We therefore reverse the judgment of the trial court, *Alander, J.*, vacating the 1996 judgment.[16]

A determination regarding a trial court's subject matter jurisdiction is a question of law. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Rich-Taubman Associates* v. *Commissioner of Revenue Services*, 236 Conn. 613, 618, 674 A.2d

families in accordance with section 46b-129, either the commissioner, or the attorney who represented such child in the prior commitment proceeding, or an attorney appointed by the superior court on its own motion, or an attorney retained by such child after attaining the age of fourteen may petition the court for the termination of parental rights with reference to such child . . . ." Public Acts 1996, No. 96-246, § 18, incorporated technical amendments to subsection (a) that are not relevant to this appeal.

[15] A petition for termination of parental rights filed in the Probate Court also may be transferred to the Superior Court. General Statutes (Rev. to 1995) § 45a-715 (g) provides in relevant part: "Before a hearing on the merits in any case in which a petition for termination of parental rights is contested in a court of probate, the court of probate shall, on the motion of any legal party except the petitioner or may on its own motion or that of the petitioner, under rules adopted by the judges of the supreme court, transfer the case to the superior court."

[16] Having concluded that the trial court, *Pittman, J.*, had subject matter jurisdiction with respect to the entire agreement, we do not address the severability of the custody and visitation provisions.

805 (1996); see also Practice Book § 60-5,[17] formerly Practice Book § 4061.

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it." (Citations omitted; internal quotation marks omitted.) *Demar* v. *Open Space & Conservation Commission*, 211 Conn. 416, 423–24, 559 A.2d 1103 (1989).

There is no dispute that the trial court, *Pittman, J.*, had subject matter jurisdiction over the generic procedural vehicles that gave rise to the 1996 judgment. The causes of action before that court were presented in a writ of habeas corpus action and a declaratory judgment action. Both of these actions are within the statutorily defined jurisdiction of the Superior Court. See General Statutes §§ 46b-1 (8)[18] and 52-29 (a).[19]

The petitioner claims, nevertheless, that the trial court, *Pittman, J.*, lacked jurisdiction to approve an agreement that requires a surrogate mother to accede to termination of her parental rights in Probate Court, citing *Hao Thi Popp* v. *Lucas*, supra, 182 Conn. 545,

---

[17] Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law . . . ."

[18] General Statutes § 46b-1 provides in relevant part: "Matters within the jurisdiction of the Superior Court deemed to be family relations matters shall be matters affecting or involving . . . (8) habeas corpus and other proceedings to determine the custody and visitation of children . . . ."

[19] General Statutes § 52-29 (a) provides: "The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment."

in support of her position. The petitioner's claim is predicated on her underlying contention that Judge Pittman, in rendering the 1996 judgment, effectuated the termination of her parental rights. Because we disagree with the petitioner's underlying contention, we reject her jurisdictional claim.

*Hao Thi Popp* v. *Lucas*, supra, 182 Conn. 545, is the leading case on the limits of Superior Court jurisdiction over the termination of parental rights. The *Hao Thi Popp* controversy arose out of a unique factual scenario that we observed was likely to occur "perhaps once in a generation": the separation of children from their parents during a war. Id., 546. The plaintiff, a Vietnamese mother, gave up two of her children for adoption immediately before the northern Vietnamese army invaded Saigon, presumably in an effort to save them. Id., 547–48. She signed a document relinquishing her parental rights to a private adoption agency, which arranged for the defendant, an American, to adopt the two children. Id., 548. When the plaintiff eventually arrived in the United States, she began efforts to regain custody of her children. Id., 549. The plaintiff sought to abrogate the purported relinquishment document in the Connecticut courts. See id. The trial court found that the plaintiff's relinquishment of her parental rights in Vietnam was voluntary and irrevocable. Id. "The court then applied the [statutorily mandated] 'best interests of the child' test . . . and ruled that the children should remain with [the defendant]." (Citations omitted.) Id.

On appeal to this court, we determined that "[t]he relinquishment document signed by the plaintiff did not terminate the plaintiff's parental rights under Connecticut law. Even if the relinquishment were irrevocable under Vietnamese law, we would not accord comity to it." Id., 550. We concluded, however, that the trial court's ruling itself, that is, its finding that the plaintiff's

relinquishment was irrevocable, terminated her parental rights. Id. We noted that, in Connecticut, the sole vehicles for terminating parental rights were by decree of the Probate Court or by order of the juvenile division of the Superior Court in a proceeding brought by the commissioner of children and youth services, now the commissioner of children and families. Id. Because neither procedure was followed in the *Hao Thi Popp* case, we concluded that the trial court lacked subject matter jurisdiction to terminate the plaintiff's parental rights. Id., 549.

By contrast, in this case, the 1996 judgment Judge Pittman rendered did not, by itself, alter the petitioner's parental status. Although the petitioner had placed the issue of the validity of the surrogacy contract before the court in her declaratory judgment action filed on April 10, 1995, that issue, together with all the other pending issues, was subsumed in the agreement submitted to Judge Pittman by the parties. In the agreement, the petitioner promised to *consent to* the termination of her parental rights. The transcript of the July 8, 1996 hearing before Judge Pittman reveals the parties' awareness of the fact that the actual termination of parental rights, a necessary precursor to adoption, was *not* effectuated immediately by the 1996 judgment, but, instead, would happen, if at all, sometime in the future.[20] In canvassing the parties at the 1996 hearing, Judge Pittman confirmed only that the parties *understood* the agreement.

---

[20] At the hearing at which Judge Pittman approved the 1996 agreement, the following exchange ensued:

"Ms. Welty [Respondents' Counsel]: [It is] my understanding, Mr. Wallace, that the provisions with respect to the termination of parental rights and the adoption, anticipates [sic] that they will be filed today, in fact, and [the petitioner] has already signed *all of the probate documents* and a consent for a stepparent adoption, and that it's the intent of the parties that the adoption *be finalized as soon as possible.*

"Mr. Wallace [Petitioner's Counsel]: That's correct." (Emphasis added.)

Judge Pittman did not purport to make a final determination regarding the termination of the petitioner's parental rights and the adoption. Both of these matters remained to be resolved by the Probate Court. Accordingly, Judge Pittman did not make a finding regarding the best interests of the child because that determination was to be made by the Probate Court in connection with its resolution of the petition for the termination of parental rights. See General Statutes § 45a-717 (f) (1).[21] Although, under the terms of the 1996 judgment, the petitioner has agreed to consent to the termination of her parental rights in Probate Court, that court must make an independent determination whether termination is in the best interests of the child. Furthermore, the child's attorney will have an opportunity to express his or her view regarding whether termination is in the best interests of the child. Consequently, we know of no reason why the parties were precluded from agreeing to settle their claims in the manner in which they did, nor are we aware of any reason why the court lacked authority to accept the parties' agreement in settlement of their claims.

We conclude, therefore, that the 1996 judgment did not effect a termination of the petitioner's parental rights. It merely approved an executory agreement between the parties.[22] The fact that the agreement included a promise to consent to the termination of

---

[21] General Statutes § 45a-717 (f) provides in relevant part: "[T]he court may approve a petition for termination of parental rights based on consent filed pursuant to this section terminating the parental rights and may appoint a guardian of the person of the child, or if the petitioner requests, the court may appoint a statutory parent, if it finds, upon clear and convincing evidence that (1) the termination is in the best interest of the child and (2) such parent has voluntarily and knowingly consented to termination of the parent's parental rights with respect to such child. . . ."

[22] We note that a stipulated judgment, which is "a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction"; Gillis v. Gillis, 214 Conn. 336, 339, 572 A.2d 323 (1990); "is binding to the same degree as a judgment obtained through

parental rights in the Probate Court did not deprive the trial court, *Pittman, J.*, of subject matter jurisdiction.

For the foregoing reasons, the trial court, *Pittman, J.*, had subject matter jurisdiction to render the 1996 judgment in accordance with the agreement. Consequently, we reverse the judgment of the trial court, *Alander, J.*, vacating the 1996 judgment.

The judgment is reversed.

In this opinion the other justices concurred.

litigation, and . . . can be set aside only if obtained by fraud, accident or mistake." (Internal quotation marks omitted.) *Housing Authority* v. *Lamothe*, 225 Conn. 757, 767, 627 A.2d 367 (1993).