[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Pamela Lary and the defendant Wilbur Lary were divorced on July 18, 1997. The parties were awarded joint custody of Tanisha, their minor child, with physical custody to the mother. Tanisha lived with her mother Pamela Lary, but spent much of her time living at the homes of her maternal grandmother, Ella Mack, and with her maternal aunt, Joyce Robinson. The plaintiff mother died on April 25, 2000, after a series of long illnesses. CT Page 10084
The defendant filed an ex-parte motion for temporary custody of Tanisha on April 28, 2000. The maternal family, including the grandmother and aunt of Tanisha, filed a motion to intervene in the dissolution action on May 15, 2000.
"In any controversy before the Superior Court as to the custody of minor children, and on any complaint under this chapter or sections 46b-1
or 51-348a, if there is any minor child of either or both parties, the court if it has jurisdiction under the provisions of chapter 815o, may allow any interested third party or parties to intervene upon motion. The court may award full or partial custody, care, education and visitation rights of such child to any such third party upon such conditions and limitations as it deems equitable. Before allowing any intervention, the court may appoint counsel for the child or children pursuant to the provisions of section 46b-54. In making any order under this section the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference." General Statutes §46b-57.
"In any dispute as to the custody of a minor child involving a parent and a nonparent, there shall be a presumption that it is in the best interest of the child to be in the custody of the parent, which presumption may be rebutted by showing that it would be detrimental to the child to permit the parent to have custody." General Statutes §46b-56b. "This statute was enacted to counteract the holding of McGaffinv. Roberts, 193 Conn. 393, 479 A.2d 176 (1984), cert. denied,470 U.S. 1050, 105 S.Ct. 1747, 84 L.Ed.2d 813 (1985), which held that [General Statutes] § 45-43 (now § 45a-606) did not create a presumption that a surviving parent is entitled to preference in a custody dispute. Bristol v. Brundage, 24 Conn. App. 402, 405, 589 A.2d 1 (1991); see also Hao Thi Popp v. Lucas, 182 Conn. 545, 551, 438 A.2d 755 (1980) (in custody contest between parent and third party, constitutional right to family integrity requires presumption in favor of parent)
"The presumption, which is one of public policy, places upon the nonparent the burden of proving sufficient facts to put the presumed fact [that it is in the best interest of the child to be in the custody of the parent] into issue. (Internal quotation marks omitted.) Garrett's Appealfrom Probate, 44 Conn. Sup. 169, 183, 677 A.2d 1000 (1994), aff'd,237 Conn. 233, 676 A.2d 394 (1996). The presumption . . . does not shift the burden of proof in a custody dispute between a parent and a nonparent, but makes that burden easier [for the parent] to sustain because it gives the parent an initial advantage. [H. Clark, Law of Domestic Relations (1968) § 17.5, p. 5911. Evans v. Santoro,6 Conn. App. 707, 711 n. 3, 507 A.2d 1007 (1986). So long as due regard is CT Page 10085 given to the presumption, however, [t]he best interests standard remains the ultimate basis of a court's custody decision. (Internal quotation marks omitted.) Garrett's Appeal from Probate, supra, 183; Hao Thi Poppv. Lucas, supra, 182 Conn. 551.
"As these authorities make clear, the presumption does not mean that the nonparent must, in order to rebut it, prove that the parent is unfit. It means that the parent has an initial advantage, and that the nonparent must prove facts sufficient to put into issue the presumed fact that it is in the child's best interest to be in the parent's custody. Once those facts are established, however, the presumption disappears, and the sole touchstone of the child's best interests remains irrespective of the parental or third party status of the adults involved. In that instance, then, neither adult — the parent or the third party — enjoys any advantage or suffers any disadvantage as a result of his or her parental or third party status." Doe v. Doe,244 Conn. 403, 454-55, 710 A.2d 1297 (1998)
"[T]he United States Supreme Court has repeatedly held that the interest of parents in their children is a fundamental constitutional right that `undeniably warrants deference and, absent a powerful countervailing interest, protection.' Stanley v. Illinois, 405 U.S. 645,651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); see also In re JuvenileAppeal (83-CD), 189 Conn. 276, 295, 455 A.2d 1313 (1983) (noting that `it is both a fundamental right and the policy of this state to maintain the integrity of the family')." In re Jonathan M., 250 Conn. 903, 907,734 A.2d 981 (1999). "Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. Santosky v. Kramer, 455 U.S. 745, 753,102 S.Ct. 1388,71 L.Ed.2d 599 (1982). (Internal quotation marks omitted.) In reJessica M., 217 Conn. 459, 464-65, 586 A.2d 597 (1991)." In re Baby GirlB., 224 Conn. 263, 280, 618 A.2d 1 (1992)
"[I]n determining whether to grant a request for permissive intervention, a court should consider several factors: the timeliness of the intervention, the proposed intervenor's interest in the controversy, the adequacy of the representation of such interests by the parties, the delay in the proceedings or other prejudice to the existing parties the intervention may cause, and the necessity for or value of the intervention in resolving the controversy." Id., 277.
In the present case, the issue is whether the defendant's filing of an ex-parte motion for temporary custody of his daughter created a controversy thereby allowing the maternal family to move to intervene and seek custody of the minor child. Apparently, the father did not understand the meaning of "joint custody" and appeared in court to obtain CT Page 10086 what he already had — custody of his minor daughter. The problem seems to stem from the fact that the maternal family does not want to give the child to her father and they have created a situation in which the child fears her father to the point of expressing her desire to stay with her maternal family. Allowing the maternal family to intervene and seek custody at this point would prejudice the defendant and perhaps undermine his attempt to establish a father-daughter relationship with his child. Also, allowing intervention at this time infringes on the defendant's constitutional right to family integrity. The father should be allowed the opportunity to establish a relationship with his daughter and the filing of the motion for temporary custody did not create a controversy because the father already possessed joint custody of his daughter.
Based on the animosity displayed by the maternal family at the hearing on the motion to intervene, the court denies the maternal family's motion to intervene without prejudice and orders psychological testing of the father and the child together. Additionally, a family relations study is ordered to ensure that the father and daughter have been reunited as previously ordered by this court. If they have been reunited, the father had stated that he would keep the child in the same school and allow liberal visitation with the child's maternal family. Family relations should be able to confirm whether any of these steps have been taken.
SANDRA VILARDI LEHENY, J.