**In re ADOPTION OF JIMENEZ.**

[Cite as *In re Adoption of Jimenez* (1999), 136 Ohio App.3d 223.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 17484.

Decided Sept. 24, 1999.

224

*Cecil, McKnight & Mues* and *Robert L. Mues,* for appellees.

*Dan D. Weiner,* for appellant.

WOLFF, Judge.

Heather Jimenez ("Heather"), appellant, appeals from a judgment of the Montgomery County Court of Common Pleas, Probate Division, which denied her motion to withdraw her consent to the adoption of her son, Devon Marcus Jimenez ("Devon").

Devon was born on June 15, 1997, shortly after Heather's eighteenth birthday and her graduation from high school. During her pregnancy, Heather was confused about what to do when her baby was born and considered an adoption through Catholic Social Services. At the end of her pregnancy, she opted against an adoption through Catholic Social Services. The first few weeks after Devon was born were difficult for Heather, however, and by July 4 she was apparently feeling overwhelmed. At a family gathering on July 4, Heather's aunt, Yvonne Arnold, offered to care for Devon for awhile. Heather agreed, and both she and her mother, Beth Jimenez, with whom she lived, seemed relieved by the arrangement. Yvonne's husband, William Arnold, was Beth's brother. The Arnolds had one biological child but had decided that it was too risky to have any more children of their own because Mrs. Arnold suffered from diabetes.

A few weeks later, the Arnolds and their attorney met with Heather to discuss the possibility of an adoption of Devon. Heather was not represented by an attorney during these discussions. According to both of the Arnolds and Heather, the attorney's explanation of the adoption process was that Heather

would sign a consent to placement for adoption covering a six month period, during which period Heather could change her mind about the adoption, and that after the six months had passed, Heather would execute a consent to adoption. The attorney did not explain that, in order to "change her mind" so as to stop the adoption process, Heather would have to show that it was in Devon's best interest to have her consent withdrawn.

A hearing on the consent to placement for adoption [1] was held before Magistrate Richard Brooks on October 22, 1997. Brooks more fully explained to Heather the consequences of signing the consent to placement for adoption, including that fact that her consent could not thereafter be withdrawn "except for good cause shown." Brooks also explained to Heather that she could execute the consent to adoption as well as the consent to placement for adoption at that time if she wanted to do so and explained the consequences of executing the consent to adoption. Heather executed the consent to placement for adoption and the consent to adoption at the hearing. Shortly thereafter, however, Heather changed her mind about the adoption.

Heather filed a motion to withdraw her consent to the adoption on November 18, 1997. The trial court conducted a hearing on the motion over six days in November 1997 and January and July 1998. The trial court filed a decision and entry overruling the motion on September 18, 1998 and filed findings of fact and law on September 21, 1998.

Heather raises eight assignments of error on appeal, which we will consider in the order that facilitates our discussion.

"I. Appellant's claimed consent was not freely, knowingly, and voluntarily given with a full understanding of the adoption process and the consequences of one's [sic ] actions."

"VII. The trial court committed prejudicial error in its determination that the best interest of Devon was to stay in the home of Mr. and Mrs. Arnold."

"VIII. The trial court committed prejudicial error and violated appellant's constitutional rights of due process by denying appellant's motion to withdraw her consent to the adoption of her son, Devon Marcus Jimenez."

Heather contends that she was misled into giving her consent, that she did not understand the ramifications of signing the consent to placement for adoption, and that she therefore did not give her consent freely, knowingly, and voluntarily. Specifically, Heather contends that, when she signed the consent to placement for adoption, she did not understand that she would be required to show that it was in Devon's best interest that he not be adopted in order to withdraw her consent.

---

1. The consent form was styled as an application for placement.

Rather, Heather claims that she thought, based on her conversations with the Arnolds' attorney, that she had retained the right to withdraw her consent within the next six months for any reason at all. Thus, Heather claims that the trial court should have allowed her to withdraw her consent.

A valid consent to an adoption is "one which has been freely, knowingly, and voluntarily given with a full understanding of the adoption process and the consequences of one's actions." *In re Adoption of Infant Girl Banda* (1988), 53 Ohio App.3d 104, 108, 559 N.E.2d 1373, 1378. The consent must be of one's own volition and with full knowledge of the essential facts, and it "is generally well-established that fraud, duress, undue influence, overreaching, mistake, or the like will justify a court in finding that consent was not freely and voluntarily executed." *Id.* at 108, 559 N.E.2d at 1378.

A valid consent is irrevocable and cannot be withdrawn unless, after a hearing, the court finds that the withdrawal is in the best interest of the person to be adopted. R.C. 3107.084. The fact that the natural mother has had a change of heart about the adoption is insufficient grounds for her to revoke her consent. *In re Adoption of Infant Boy* (1989), 60 Ohio App.3d 80, 86, 573 N.E.2d 753, 760.

R.C. 3107.081(A)(4) expressly provides that, as a condition to accepting the natural parent's consent to a minor's adoption, the trial court "shall question the parent to determine that the parent understands the adoption process [and] the ramifications of consenting to the adoption."

At the hearing before the trial court, the following evidence was presented regarding Heather's understanding of the consequences of her consent to Devon's placement with the Arnolds. The Arnolds and Heather each testified that the Arnolds' attorney's explanation of the adoption process implied that Heather could simply change her mind during the six month period after she executed the consent to placement for adoption, and that if she did so the adoption process would end. Although we recognize that the Arnolds' attorney did not represent Heather in these proceedings, that fact does not negate the role that his explanation of the adoption process played in Heather's state of mind at the time of the alleged consent. In addition to the information provided by the Arnolds' attorney, the magistrate discussed the adoption process with Heather. The magistrate testified that he had informed Heather of the limited circumstances in which her consent could be withdrawn, as follows:

"* * * I say that if they wish to execute that consent that it cannot be withdrawn except for good cause shown. And that—and that is difficult to do. I try to tell them that it's difficult. Of course, I can't say it's impossible, because

it's not. It can be up to the Judge. That is normally what I say in that regard, and that's what I said in—with regard to this lady."

The magistrate further testified that he had asked Heather "a couple of times" whether she understood the consent form because he wanted to be sure that she understood what she was doing. The consent form, however, did not indicate the basis upon which consent could be withdrawn. Heather and the magistrate both testified that Heather had not asked any questions about the meaning of the consent form at the hearing when she was offered the opportunity to do so. The magistrate stated that Heather "did not have any reticence about it. She said she wanted to do it and get it done." The magistrate also testified that Heather seemed very calm and collected at the hearing. On cross-examination, the magistrate admitted that he had not pointed out to Heather that the Arnolds' attorney had had a conflict of interest in presenting information to her about the adoption process. Heather testified that, after the hearing, she had still believed that she could change her mind about the adoption and that she would not have signed the consent if she had known otherwise.

■ The question raised in Heather's first assignment of error—whether she had ever executed a valid consent to the adoption—is, in our view, the critical issue. It is undisputed that the information provided to Heather by the Arnolds' attorney was inaccurate and misleading. Remarkably, the consent to placement for adoption employed by the probate court likewise provided no information about the rights forfeited by signing the form or the requisite showing in order to withdraw one's consent. Thus, in order for us to conclude that Heather had knowingly consented to Devon's adoption, we would have to be convinced that the information provided by Magistrate Brooks apprised Heather of the full effect of her consent to placement for adoption, keeping in mind that the Arnolds' attorney had already created or at least nurtured Heather's mistaken impression that she could change her mind for any reason at all and thereby stop the adoption process.

Magistrate Brooks told Heather that she could withdraw her consent "for good cause shown." This statement does not fully and accurately convey what Heather would be required to show in order to withdraw her consent. Good cause is a broader standard, and thus an easier standard to satisfy, than the best interest of the child. Heather may have believed that lifestyle changes, such as getting a steady job, or even a genuine change of heart about her willingness to care for Devon would have constituted good cause to withdraw her consent. Although the magistrate's explanation should have apprised Heather that her consent would not be as easy to withdraw as she first thought, it still did not adequately convey what she would be required to show. Moreover, the magistrate did not strictly comply with the requirement of R.C. 3107.081(A)(4) that he

question Heather to determine her understanding of the adoption process and of the ramifications of her consent. Under these circumstances, we simply cannot conclude that Heather gave her consent to the adoption with full knowledge of the essential facts. *Banda, supra.* Because we conclude that Heather's consent to the adoption was invalid at the outset, R.C. 3107.084 did not apply, and Heather was not required to show that it was in Devon's best interest not to proceed with the adoption.

We recognize that our conclusion that Heather's consent to the adoption was invalid, and our judgment in accordance with that conclusion, may be unfortunate for the Arnolds and for Devon. The Arnolds have cared for and bonded with Devon for over two years, and they appear to be capable of providing a stable and loving home. However, we cannot underestimate the importance of a natural parent's knowing consent to placing a child for adoption, nor can we ignore the fact that the Arnolds' attorney gave Heather inaccurate and misleading information and that the trial court failed to provide Heather with crucial information prior to her consent to the placement for adoption.

The first and eighth assignments of error are sustained. The seventh assignment of error is overruled as moot.

"II. The form denoted 'Consent to Adoption' signed by Heather Jimenez on October 22, 1997 is void on its face."

◼ Heather claims that the consent to adoption that she executed on October 22, 1997, was either void on its face or misleading because the line on the form that was supposed to contain the child's "Name after adoption" listed the child as Devon Marcus Jimenez rather than Devon Marcus Arnold. Because we assume that Heather was not confused about the child that was at issue, we find that she suffered no prejudice as a result of the alleged error. Moreover, Heather has cited no authority for her veiled claim that such an error would be grounds to withdraw her consent to the adoption.

The second assignment of error is overruled.

"III. The judge committed prejudicial error by going outside the courtroom to obtain evidence."

Heather claims that the judge "talked to someone outside of the courtroom" and relied on statements made by this person in reaching his decision. This allegation is rooted in the judge's statement, during a discussion with counsel in open court, that Heather had said "I just gave my child away" or words to that effect as she was leaving the courtroom on the day of the hearing before Magistrate Brooks. The judge mentioned the comment in the context of questioning Heather's assertion that she had not understood what she had done that day, and he said "I can get the witness." In response to the judge's comment,

Heather admitted that she had said "I signed my baby away" but maintained that she had not understood at that time that the placement was permanent.

It would have been improper for the trial judge to have relied on a statement attributed to Heather by a person outside the courtroom. Assuming *arguendo* that the trial court did rely on such a statement, the error was obviated by Heather's admission at several points in her testimony that she had in fact made such a statement immediately after the hearing before the magistrate.

The third assignment of error is overruled.

"IV.  The trial court committed error, prejudicial to the due process rights of appellant relative to its ruling denying appellant's request for a continuance for the purpose of inspecting the children's medical center records."

Heather claims that the trial court erred in denying her motion for a continuance of the *in camera* inspection of the medical records of the Arnolds' biological child and in failing to inspect the records prior to reaching its decision. The continuance was sought to enable Heather's counsel to participate in the *in camera* inspection.

There is no evidence in the record that the trial court did not review the medical records in question before reaching its decision. In the absence of any evidence to the contrary, we assume that the court acted properly. *In re Risch* (Feb. 14, 1997), Greene App. No. 96 CA 52, unreported, 1997 WL 66717. Moreover, the trial court was not required to permit Heather's attorney to participate in the court's inspection of the documents, and we find no error in its failure to do so. At the point that the continuance was denied, the hearing had already extended over an eight month period; the trial court could have reasonably concluded that any interest counsel had in participating in the inspection of the documents was outweighed by its interest in the prompt disposition of the matter so as to militate against any further delay.

The fourth assignment of error is overruled.

"V.  Appellee's counsel committed misconduct in his letter sent to Dr. Barna."

The trial court ordered Heather and the Arnolds to submit to psychological evaluations by Dr. J. Daniel Barna. Heather claims that she was prejudiced by a letter sent by the Arnolds' attorney to Dr. Barna regarding the psychological evaluations, which characterized her behavior as "vindictive, hateful, hostile, and spiteful" since the filing of her motion to withdraw her consent. Dr. Barna testified, however, that he was not influenced by the tone of the attorney's letter and that he customarily received such letters when acting as an independent examiner. Further, Heather has pointed to nothing in the record which would

demonstrate the alleged bias. Accordingly, we find that the attorney's comments were inconsequential.

Under this assignment of error, Heather also alleges that the Arnolds were "guilty of misconduct during the proceedings" as evidenced by the fact that they were held in contempt of court for failing to comply with the court's visitation orders. The alleged misconduct was obviously dealt with in the trial court since the Arnolds were held in contempt. We fail to see how this issue has any bearing on the trial court's ultimate disposition of the case.

The fifth assignment of error is overruled.

"VI. The trial court committed error prejudicial to the due process rights of the appellant and abused its discretion by denying the opportunity for witness Beth Jimenez to testify during the rebuttal portion of appellant's case."

Heather claims that her mother, Beth Jimenez, should have been allowed to testify on rebuttal despite her disregard of the court's order that the witnesses remain separated.

It is within the trial court's discretion whether to allow a witness who has violated a separation order to testify. *State v. Morris* (1982), 8 Ohio App.3d 12, 17, 8 OBR 13, 18–19, 455 N.E.2d 1352, 1358; *State v. Dean* (1951), 90 Ohio App. 398, 401, 48 O.O. 81, 82, 106 N.E.2d 303, 305. The parties agreed at the outset of the hearing that each would be responsible for the separation of its own witnesses. Thus, if Heather intended to recall her mother, it was her responsibility to see that her mother remained outside the courtroom during the hearing. She and her attorney apparently did not take this responsibility seriously. The fact that the Arnolds did not continually object to Beth Jimenez's presence did not entitle her to testify, as Heather suggests. Thus, the trial court acted within its discretion in excluding Beth Jimenez's rebuttal testimony. Moreover, Beth Jimenez had already testified on direct and cross-examination, and it is apparent from the proffer of her rebuttal testimony that it was largely repetitive of her own previous testimony or the testimony of other witnesses or irrelevant to the issues pertinent to the court's decision. As such, we are of the view that Heather suffered no prejudice from the exclusion of this testimony.

The sixth assignment of error is overruled.

The order of the trial court denying Heather's motion to withdraw her consent will be reversed, and this matter will be remanded for further proceedings.

*Judgment accordingly.*

GRADY, P.J., and KOEHLER, J., concur.

RICHARD N. KOEHLER, J., retired of the Twelfth Appellate District, sitting by assignment.

GRADY, Presiding Judge, concurring.

Pursuant to R.C. 3107.06(A), Heather Jimenez' written consent was needed to permit the probate court to grant the petition for adoption that Bill and Yvonne Arnold filed. That consent is valid only if Heather Jimenez gave it freely, knowingly, and voluntarily, with a full understanding of the adoption process and the consequences of her actions. *In re Adoption of Zschach* (1996), 75 Ohio St.3d 648, 665 N.E.2d 1070, certiorari denied 519 U.S. 1028, 117 S.Ct. 582, 136 L.Ed.2d 513.

In an adoption of this kind, the parent must appear personally before the court to give consent. R.C. 3107.081(A)(1). Division (C)(3) of that section provides, *inter alia:* "The court shall question the parent to determine that the parent understands the adoption process (and) the ramifications of consenting to the adoption." Among those "ramifications" is the limited grounds on which consent subsequently may be revoked. In that regard, R.C. 3107.084 states:

"(A) A consent to adoption is irrevocable and cannot be withdrawn after the entry of an interlocutory order or after the entry of a final decree of adoption when no interlocutory order has been entered. The consent of a minor is not voidable by reason of the minor's age.

"(B) A consent to adoption may be withdrawn prior to the entry of an interlocutory order or prior to the entry of a final decree of adoption when no interlocutory order has been entered if the court finds after hearing that the withdrawal is in the best interest of the person to be adopted and the court by order authorizes the withdrawal of consent. Notice of the hearing shall be given to the petitioner, the person seeking the withdrawal of consent, and the agency placing the minor for adoption."

A *substantial compliance* rule reasonably applies to the procedures which R.C. 3107.081(C) requires of the court. However, even substantial compliance requires a finding that the parent has the particular understandings that are concerned in the statute, existence of which the court is required to determine. That determination contemplates a finding that the parent's subjective understanding is a correct one.

I agree with Judge Wolff that the explanation which the magistrate gave Heather Jimenez, that she would be required to show "good cause" to withdraw her consent, was insufficient to satisfy the requirements of R.C. 3107.081(A)(1) and R.C. 3107.084. Absent satisfactory compliance, her consent was not "knowingly" given, and is invalid. *In re Adoption of Zschach, supra.*

I have written separately to put the mistaken understanding that Heather Jimenez was given by the Arnolds' attorney in context. That understanding was clearly mistaken. Even so, it would not be a basis to find the mother's consent invalid absent the magistrate's failure to satisfy the requirements the law imposes. Properly given, such admonitions avoid claims that a consent was not knowingly given on account of misinformation obtained from other sources.