OPINION
{¶ 1} Appellant, the birth mother of Baby Girl E, appeals from the August 12, 2004 judgment of the Franklin County Court of Common Pleas, Probate Division, denying her motion to vacate the court's December 4, 1996 final order granting the petition of appellee S.B. to adopt the child, who was fathered out of wedlock by S.B.'s husband, appellee R.B. Because the trial court erred in granting S.B.'s motion for a directed verdict, we reverse the court's judgment and vacate the 1996 adoption decree.
 {¶ 2} Except as noted, the facts are not in dispute. Appellant was born in 1971 during the Vietnam War in a rural province in what was formerly North Vietnam. Appellant attended an agricultural university in Bac Thai Province near Hanoi in (North) Vietnam where she was a student in an English class taught by R.B., who began teaching at the university in June 1992. R.B. was an American, married, and in his mid-40's. R.B. was also an ordained Southern Baptist minister. Against Vietnamese government policy, R.B. engaged in missionary work in Vietnam and conducted Christian Bible studies in his home.
 {¶ 3} In June 1993, R.B. was joined in Vietnam by his family: appellee S.B. and two young sons. Because appellees could not read or speak Vietnamese, appellant acted as their interpreter, accompanied them around town, and taught Vietnamese to appellees' sons. Appellant also visited appellees in their home, often to attend R.B.'s Bible studies. Over time, the relationship between appellant and appellees became similar to a close familial relationship; appellees referred to appellant as their "adopted daughter" and in return appellant called appellee S.B. "Mom" and regarded appellees as her second family.
 {¶ 4} Appellant agreed to accompany appellees on trips in Vietnam, including an overnight trip with R.B. in April 1994 to Da Nang and Hue, where R.B. had served during the Vietnam War. R.B. admits that during the trip to Hue he engaged in sexual relations with appellant that resulted in her pregnancy with Baby Girl E.R.B. contends he had sex with appellant only once; appellant contends R.B. initiated and engaged in sexual relations with her on several occasions.
 {¶ 5} Baby Girl E was born in Hanoi on February 20, 1995. R.B.'s employment with the university ended the following July, after which appellees and their two sons left Vietnam and returned to the United States. R.B. returned to Vietnam a few months later and acquired the necessary documents for Baby Girl E to leave the country. On January 15, 1996, he and the then 11-month old child left Vietnam and joined S.B. and appellees' two sons in Ohio. Appellant remained in Vietnam, unable to leave, but maintained contact with her daughter and appellees through letters, telephone, and e-mail. Appellees mailed photographs of the child to appellant and also sent her letters and videos of the child addressing appellant as "mommy."
 {¶ 6} On October 18, 1996, S.B. filed a petition, as a step-parent, to adopt Baby Girl E. With the petition, S.B. filed a "Consent to Adoption" form executed by R.B. as the biological father. Pursuant to R.C.3107.06(A), which requires the birth mother's written consent to an adoption, S.B. also presented the probate court with an affidavit signed by appellant purporting to give her consent to S.B.'s adoption of the child. Appellant had signed the affidavit at the United States Embassy in Hanoi on January 12, 1996, just three days before R.B. left Vietnam with the child.
 {¶ 7} Appellant's affidavit, written in English rather than Vietnamese, was drafted shortly before appellant signed it and was notarized by a United States consular officer at the embassy. R.B. contends the United States consular officer, an attorney, advised appellant concerning the affidavit. The consular officer testified it was not her practice to give legal advice under such circumstances or to determine whether appellant understood the legal import of the document. Appellant denied receiving advice from anyone but R.B. regarding her consent to Baby Girl E's adoption and further claimed R.B. told her not to discuss the matter with anyone but him.
 {¶ 8} On December 4, 1996, the probate court entered a final decree granting S.B.'s step-parent adoption of Baby Girl E. The adoption decree had the effect of terminating all of appellant's parental rights to the child and creating such rights in S.B. as the child's adoptive parent. R.C. 3107.15(A). According to the record, including R.B.'s own testimony, neither the probate court nor appellees provided appellant with written notification of the child's adoption, either before or after the adoption proceedings were held. Appellant's affidavit "consenting" to the adoption does not contain a waiver of such notice.
 {¶ 9} With R.B.'s assistance, appellant left Vietnam on December 30, 1997 and emigrated to Honduras with the apparent belief that there she would be reunited and live with Baby Girl E. Although R.B. brought the child to see appellant in Honduras in April 1998, R.B. and the child returned to the United States after a few weeks. In March 1999, R.B. wrote a letter to appellant's sister in Vietnam stating he had planned to take Baby Girl E to Honduras again in June 1999, open a restaurant for appellant to run, and be together with appellant and the child as a family. The letter explained the plan changed, however, when appellant informed R.B. that, although she wanted her daughter to live with her, she did not want R.B. to live with them. Thereafter, R.B. did not bring Baby Girl E to see appellant.
 {¶ 10} In February 2003, appellant was finally able to emigrate to the United States, where she married an American man she met in Honduras; they settled in Marion, Indiana. Appellant made repeated efforts to see her daughter, who lived in Gahanna, Ohio with her half-brothers and S.B. According to R.B., he has resided primarily in South Korea and Hanoi, Vietnam since June 1998, and only occasionally has visited S.B. and his three children in Gahanna.
 {¶ 11} Appellant consulted an attorney on July 30, 2003 regarding her unsuccessful attempts to see her daughter. According to appellant, she then first discovered her daughter had been legally adopted.
 {¶ 12} On September 30, 2003, appellant filed a motion pursuant to R.C. 3107.16(B) requesting the probate court to vacate its December 4, 1996 adoption decree. Appellant contended the 1996 adoption decree was void because her "consent" to the adoption was the product of fraud, misrepresentation, coercion, and/or duress that rendered invalid her affidavit of adoption consent. Appellant claimed that when she signed the affidavit "consenting" to S.B.'s adoption of Baby Girl E, she believed her daughter, as a Vietnamese-American born out of wedlock, was in grave danger in Vietnam but would be safe and not threatened in the United States. Appellant further claimed that, based on appellees' representations and their references to appellant as their "adopted daughter," she understood the English word "adoption" to mean merely a close relationship akin to a family relationship, not a legal proceeding or legal status that would terminate appellant's parental rights to Baby Girl E. Appellant also claimed that R.B. told her that her affidavit "consenting" to S.B.'s adoption of the child would never be used to create a barrier between appellant and her daughter; rather, it would be used only in the event R.B. died, in which case the affidavit would allow S.B., rather than a stranger, to care for Baby Girl E and thus would enable appellant to find the child through S.B.
 {¶ 13} On February 4, 2004, a trial was held in the probate court which began in the morning and ended late that evening. Appellant testified on her own behalf and presented testimony of three other witnesses, including extensive testimony from appellee R.B. At approximately 9:00 p.m., upon the conclusion of appellant's presentation of her case and subject to the post-trial submission of telephonic and videotape depositions of four witnesses who were unavailable prior to the trial, appellees' counsel moved for a directed verdict pursuant to Civ.R. 50. Appellees' counsel argued that appellant failed to prove that appellees used fraud to obtain appellant's consent to Baby Girl E's adoption.
 {¶ 14} In a decision issued from the bench at the conclusion of the February 4, 2004 trial, the court found appellant's allegations uncorroborated by independent evidence. The court noted that it made sense that appellant would consent to Baby Girl E's adoption if she wanted to get the child out of Vietnam due to fear for the child's life. The court concluded, however, that the evidence failed to prove the adoption would not have been granted but for appellees' perpetration of fraud, the sole statutory basis for vacating a final step-parent adoption decree more than a year after such a decree has been entered. See R.C.3107.16(B). The court granted appellees a directed verdict subject to the court's review of the four depositions yet to be taken and filed with the court.
 {¶ 15} At a hearing held April 5, 2004, the probate court heard arguments on appellees' post-trial motion to admit evidence appellees had offered at the February 4, 2004 trial. In granting the motion, the court noted that appellees' failure to move at trial for admission of the evidence was an oversight on their part. The probate court subsequently reviewed the four depositions filed after trial and entered judgment on August 12, 2004 (1) affirming the previous finding that appellant did not prove appellees perpetrated fraud in obtaining her consent to Baby Girl E's adoption, and (2) granting a directed verdict in favor of appellees on appellant's motion to vacate the final adoption decree for Baby Girl E. Appealing the judgment, appellant assigns the following errors:
ASSIGNMENT OF ERROR NO. 1
THE TRIAL COURT ERRED, ABUSED ITS DISCRETION, AND HELD AGAINST THE WEIGHT OF THE EVIDENCE AND AGAINST OHIO LAW BY IMPROPERLY AWARDING A DIRECTED VERDICT AGAINST THE APPELLANT AND DISMISSING HER PETITION TO VACATE THE STEP-PARENT ADOPTION OF HER CHILD.
ASSIGNMENT OF ERROR NO. 2
THE TRIAL COURT ERRED, ABUSED ITS DISCRETION, AND HELD AGAINST THE WEIGHT OF THE EVIDENCE AND AGAINST OHIO LAW WHEN IT DENIED THE APPELLANT'S MOTION TO VACATE HER "CONSENT" AND THE FINAL DECREE OF ADOPTION.
 {¶ 16} Appellant's assignments of error are interrelated. Together they assert the probate court erred in directing a verdict in appellees' favor, thereby denying appellant's motion to vacate the court's 1996 order finalizing S.B.'s step-parent adoption of Baby Girl E.
 {¶ 17} As a preliminary matter, although appellees moved for and were granted a directed verdict by the probate court, a motion for directed verdict lies only in a jury trial, not in a bench trial. Parrish v.Machlan (1997), 131 Ohio App.3d 291, 294. The record reflects the probate court weighed the evidence in deciding appellees' motion, expressly finding appellee R.B.'s testimony to be "plausible." (Tr. 477.) Therefore, for purposes of this appeal, we will treat appellees' motion for judgment at the close of appellant's case as one for dismissal, pursuant to Civ.R. 41(B)(2), for which the trial court is the trier of fact and weighs the evidence. Johnson v. Tansky Sawmill Toyota, Inc.
(1994), 95 Ohio App.3d 164, 167. We will not set aside a dismissal under Civ.R. 41(B)(2) unless it is incorrect as a matter of law or is against the manifest weight of the evidence. Id.
 {¶ 18} Additionally, because the probate court admitted and weighed evidence appellees offered at trial, and appellees did not request and the trial court did not preclude appellees' presentation of further evidence, appellees have waived any claim that they may have additional evidence to present before final disposition of this case.
 {¶ 19} R.C. 3107.16(B), which statutorily limits challenges of adoption decrees, states:
Subject to the disposition of an appeal, upon the expiration of one year after an adoption decree is issued, the decree cannot be questioned by any person, including the petitioner, in any manner or upon any ground, including fraud, misrepresentation, failure to give any required notice, or lack of jurisdiction of the parties or of the subject matter, unless, in the case of the adoption of a minor, the petitioner has not taken custody of the minor, or, in the case of the adoption of a minor bya stepparent, the adoption would not have been granted but for fraudperpetrated by the petitioner or the petitioner's spouse, or, in the case of the adoption of an adult, the adult had no knowledge of the decree within the one-year period.
(Emphasis added.)
 {¶ 20} According to appellant, clear and convincing evidence establishes that the validity of her "consent" to the adoption was vitiated not only by fraud pursuant to R.C. 3107.16(B), but also by duress, undue influence, and mistake or misunderstanding. Appellant thus argues that the affidavit appellees submitted to the court as evidence of appellant's "consent" to S.B.'s step-parent adoption is invalid, and the resulting adoption decree is void. Appellant contends the court's finding that appellant did not prove her consent to the adoption was obtained by fraud is against the manifest weight of the evidence, and the court's failure to determine whether her consent was invalidated by the other factors was erroneous as a matter of law.
 {¶ 21} A parent's right to raise and nurture a child is an "essential" and "basic civil right." In re Murray (1990), 52 Ohio St.3d 155, 157, citing Stanley v. Illinois (1972), 405 U.S. 645, 651, 92 S.Ct. 1208. The relationship between a parent and a child is a constitutionally protected liberty interest for which due process of law affords a natural parent the right to adequate notice and an opportunity to be heard before his or her parental rights to a child are terminated by adoption. In re Adoptionof Zschach (1996), 75 Ohio St.3d 648, 653, certiorari denied,519 U.S. 1028, citing Quilloin v. Walcott (1978), 434 U.S. 246, 255,98 S.Ct. 549; State ex rel. Smith v. Smith (1996), 75 Ohio St.3d 418, 421;In re Adoption of Greer (1994), 70 Ohio St.3d 293, 298, citing Lehr v.Robertson (1983), 463 U.S. 248, 103 S.Ct. 2985. "The fundamental requirement of due process is the opportunity to be heard `at a meaningful time and in a meaningful manner.'" Matthews v. Eldridge
(1976), 424 U.S. 319, 333, 96 S.Ct. 893, quoting Armstrong v. Manzo
(1965), 380 U.S. 545, 552, 85 S.Ct. 1187.
 {¶ 22} Where application of an adoption statute operates to terminate a person's parental rights without adequate notice and an opportunity to timely challenge the adoption decree in a meaningful manner, the statute unconstitutionally deprives the person of fundamental due process and is inapplicable under the circumstances. Armstrong, supra; In re Rabatin
(1992), 83 Ohio App.3d 836, 840-841; In re Adoption of Knipper
(1986), 30 Ohio App.3d 214. An adoption decree that is defective because it has violated a natural parent's due process rights may be set aside under Civ.R. 60(B)(5), which allows relief from a final judgment for any reason justifying the relief more than one year after the entry of the final adoption decree. Id. (holding R.C. 3107.16[B] may not constitutionally bar the biological mother of a child from attacking an adoption decree more than four years after the decree was entered where the adoption proceedings which terminated the mother's parental rights deprived her of fundamental due process).
 {¶ 23} Similarly, valid parental consent to the issuance of an adoption order is necessary. Such consent "is a jurisdictional prerequisite which, if absent, allows the order to be attacked as void."Zschach, at 657, quoting McGinty v. Jewish Children's Bur. (1989),46 Ohio St.3d 159, 161. "A valid consent is `one which has been freely, knowingly, and voluntarily given with a full understanding of the adoption process and the consequences of one's actions.'" Zschach,
supra, quoting In re Adoption of Infant Girl Banda (1988),53 Ohio App.3d 104, 108; In the Matter of the Adoption of Baby Doe,
Franklin App. No. 03AP-917, 2004-Ohio-689, ¶ 16. Accordingly, a jurisdictional prerequisite for an adoption decree is that "[t]he consent must be of the consenter's own volition, free from duress, fraud, or other consent-vitiating factors and with full knowledge of the essential facts." Infant Girl Banda, at paragraph one of the syllabus; In reAdoption of Jimenez (1999), 136 Ohio App.3d 223, 227. "[T]he real and ultimate fact to be determined is whether the party affected was denied the exercise of his or her free will." Zschach, at 659, citing Tallmadgev. Robinson (1952), 158 Ohio St. 333, 340. See, also, In re Hua (1980),62 Ohio St.2d 227, 232.
 {¶ 24} In examining Ohio's statutes, its consent provisions, and their due process implications, we note that, because Ohio's adoption statutes are in derogation of the common law, strict compliance with the statutes is necessary to protect the fundamental rights of natural parents. Lemleyv. Kaiser (1983), 6 Ohio St.3d 258; In re Adoptions of Groh,153 Ohio App.3d 414, 2003-Ohio-3087, ¶ 73. Ohio's adoption statutes require the probate court to provide notice of the filing of an adoption petition to any "person whose consent to the adoption is required * * * but who has not consented[.]" See R.C. 3107.11. There is no statutory requirement that notice be given to persons who have consented to the adoption, the statute presuming that the consent is valid. See, e.g.,Infant Girl Banda, at 108 (determining that Ohio's adoption statutes presuppose that a valid written consent has been executed). Subject to exceptions enumerated in R.C. 3107.07, none of which apply here, the child's mother is a "person whose consent to the adoption is required" and who must execute written consent to the adoption of her child. R.C.3107.06(A).
 {¶ 25} If the person petitioning for the adoption of a minor child isnot a step-parent, the child's natural mother is required to appear personally before the probate court, which must question the mother to determine that her consent to the adoption is voluntary and that she understands the adoption process and the ramifications of consenting to the adoption. R.C. 3107.081(A). However, if the petitioner is a step-parent, the child's natural mother may consent to her child's adoption without appearing before the court if the natural mother executed written consent to the step-parent's adoption of the child "in the presence of a person authorized to take acknowledgments." R.C.3107.081(E). Persons authorized to take acknowledgements in Ohio include a clerk or judge of a court of record. Cf. R.C. 5301.01; Morrow v. Family Comm. Serv. of Catholic Charities, Inc. (1996), 28 Ohio St.3d 247, 251. The record does not reflect whether the consular officer who notarized appellant's signature on the adoption consent affidavit was a "person authorized to take acknowledgements" pursuant to R.C. 3107.081(E).
 {¶ 26} "A signed consent agreement constitutes prima facie evidence that the consent to an adoption is valid." In re Adoption of Yurick
(Dec. 15, 1999), Summit App. No. 19520, appeal dismissed,88 Ohio St.3d 1480; In re Adoption of Brunner (Mar. 11, 1993), Franklin App. No. 92AP-1447. A natural parent's change of heart about an adoption is insufficient to revoke a parent's valid consent to the adoption. In reAdoption of Infant Boy (1989), 60 Ohio App.3d 80, 86; Jimenez, at 227. However, if valid consent of the natural parent to the adoption proceedings is lacking, the adoption decree violates due process of law, and giving effect to the decree violates the public policy of this state. Smith, at 421. Accordingly, if a natural parent establishes by clear and convincing evidence that his or her "consent" was the result of fraud, duress, or some other consent-vitiating factor, the "consent" is invalid as not freely and voluntarily given and the adoption decree is void. Zschach, at 657; Infant Girl Banda, at 108; Morrow, at 251; In reAdoption of Holcomb (1985), 18 Ohio St.3d 361, 368; In re Adoption ofBaby Doe, supra.
 {¶ 27} As appellant claims, the probate court's decision and judgment in this case do not indicate that the court determined, or even considered, whether the 1996 adoption decree is invalid due to any factor other than fraud. However, appellant argued in the probate court that the adoption decree must be vacated as void because her "consent" to the adoption was the product not only of fraud, as provided by R.C. 3107.16(B), but also the consent-vitiating factors of duress, undue influence, mistake and/or misunderstanding that rendered her "consent" affidavit invalid.
 {¶ 28} Resolution of appellant's appeal hinges on the tension between the noted constitutional provisions and the language of R.C. 3107.16(B). Due process requires that appellant be given adequate notice of the adoption proceedings together with an opportunity to challenge the adoption proceedings in a meaningful and timely manner, unless shevalidly consented to the adoption. Due process considerations thus mandate that the consent, which obviates the need for notice, may be challenged on any grounds rendering it invalid, including duress. R.C.3107.16(B), however, eliminates some of the bases on which that consent may be challenged, providing that after the lapse of one year the consent may be set aside only for fraud. Because R.C. 3107.16(B) may not constitutionally impair the due process principles that make notice unnecessary only when the natural parent has given valid consent to the adoption, we are compelled to examine not just whether the "consent" in this case was obtained by fraud, but rather whether it is the product of duress, undue influence, mistake and/or misunderstanding.
 {¶ 29} Preliminarily, we note that some pertinent facts are undisputed. Specifically, appellees were in contact with appellant and communicated with her by mail and other means both before and after Baby Girls E's adoption proceedings. Appellees thus could have personally provided, or could have had the court provide, written notification to appellant of the adoption proceedings in accordance with R.C. 3107.11 and thus avoided the due process issues that now govern appellant's appeal. Neither the probate court nor appellees provided appellant written notification of the adoption decree within R.C. 3107.16(B)'s one-year limitation period for challenging the adoption decree. Appellant's signed affidavit, submitted to the court by appellees as evidence of appellant's "consent" to the adoption, does not contain a waiver of notice of the adoption proceedings concerning Baby Girl E.
 {¶ 30} If clear and convincing evidence establishes appellant's consent to the adoption was invalid for fraud, duress, or some other factor that renders the consent ineffective, and therefore ineffective to waive statutory notice of the adoption proceedings, application of R.C.3107.16(B) is unconstitutional as applied in this case. Rabatin;Knipper, supra. Relying on R.C. 3107.16(B), the probate court considered only whether fraud rendered the consent invalid, and in doing so erred. Instead, the probate court should have determined whether appellant's consent to the step-parent adoption was invalid due to duress or any other consent-vitiating factor claimed by appellant and recognized in law. Morrow, at 251; Infant Boy, at 81; In re Adoption of Hockman,
Portage App. No. 2004-P-0079, 2005-Ohio-140, ¶ 19, 24; In re Adoption ofGatley (Sept. 21, 2000), Franklin App. No. 99AP-1445; Yurick, supra.
 {¶ 31} Although evidence regarding several consent-vitiating factors was presented at trial, the determinative factor in this case is "duress." The Ohio Supreme Court in In re Hua, at 232, set forth the test for whether consent is invalid due to duress: "The real and ultimate fact to be determined in every case is whether the party affected really had a choice; whether he had his freedom of exercising his will." Id., citingTallmadge, supra. Duress is present when a state of mind was created such that the person giving consent "was induced to do an act which [s]he would not otherwise have done and which [s]he was not bound to do."Tallmadge, at 340.
 {¶ 32} In determining whether duress is present, a court assesses the effect of claimed "threats" upon the particular individual providing the consent, not the effect of such "threats" upon an "ordinary" individual. In doing so, a court considers the age, sex, health, and mental condition of the person giving the "consent," as well as all the surrounding circumstances in which the person gave the "consent." Id., at paragraph two of the syllabus. Threats constituting duress include threats not only of personal injury or imprisonment, but also of personal or family disgrace, which "may be of such gravity as to deprive the one threatened of the mental capacity necessary to execute a valid [agreement]." Id. at 341.
 {¶ 33} Dr. Neil Jamieson, presented as an expert witness on Vietnamese culture, testified that in the mid-1990's, Vietnam had a hierarchical, male-dominated society in which fathers and teachers were authority figures, younger people were subservient to older people, and someone like appellant would be obedient, docile, and dependent on a male teacher. Dr. Jamieson stated that appellant was from one of the more isolated provinces in Vietnam and was essentially a "country girl." Appellee R.B. acknowledged that appellant was "parochial" and knew little about the world outside her rural province, and he concurred with Dr. Jamieson's description of Vietnam as a patriarchal society. R.B. further noted that appellant's family is Kinh, a conservative ethnic group in which a woman bearing a child out of wedlock is ostracized by her family and society.
 {¶ 34} Uncontroverted evidence was presented, including R.B.'s own testimony, that appellant suffered severe repercussions at the hands of Vietnamese authorities after she became pregnant with R.B.'s child. Among those were multiple arrests, confinement in jail, interrogations, intimidation, threats that she and her child would "disappear," threats against her Vietnamese family, denial of permission to do graduate studies in Thailand, and loss of her residency permit that resulted in appellant becoming a "non-person." R.B. acknowledged that loss of a residency permit was a serious matter in Vietnam.
 {¶ 35} Consistent with R.B.'s testimony, appellant testified that she signed the adoption consent affidavit and gave permission for R.B. to take Baby Girl E to the United States because she feared for her own life and the life of her child, and because she believed it was very dangerous for her daughter, as a Vietnamese-American child born out of wedlock, to remain in Vietnam. Appellant further testified that even if Baby Girl E were not killed in Vietnam, but if appellant herself were killed, the child in all likelihood would die because no one would want to take care of her due to her mixed parentage. Dr. Jamieson agreed there would have been legitimate cause for appellant's concerns regarding the safety of herself, her child, and her family. Indeed, even R.B. admitted that before appellant and Baby Girl E got out of Vietnam, "the two of them were in a real serious dangerous situation." (Tr. 424.)
 {¶ 36} Premised on those facts, appellant's "consent" to S.B.'s step-parent adoption of her daughter was not an exercise of her free will but was the result of duress caused by appellant's concern for the life of her Vietnamese-American child. Courts have found consent to be invalided by duress under similar circumstance. See In re Hua, supra, andHao Thi Popp v. Richard (1980), 182 Conn. 545, 438 A.2d 755. Moreover, in addition to the intimidation, confinement and threats directed to appellant, the greater weight of the evidence further demonstrates that appellant signed the adoption consent affidavit, written in English, without legal advice and with limited understanding, or misunderstanding, as to its consequences. Cf. Hao Thi Popp, supra.
 {¶ 37} The importance of a natural parent's free, knowing, and voluntary consent to the adoption of a child cannot be overstated. Because clear, convincing, and uncontroverted evidence establishes that appellant's consent to S.B.'s adoption of Baby Girl E was given under circumstances constituting duress, the affidavit purporting to give appellant's consent to the adoption is invalid and the adoption decree is accordingly void as lacking the requisite valid parental consent to the adoption. Zschach; McGinty; In re Hua. Appellant's assignments of error are sustained, and the probate court's judgment denying appellant's motion to vacate the final adoption decree is reversed.
Judgment reversed.
Petree and McGrath, JJ., concur.