[Cite as *In re C.C.S.*, 2016-Ohio-388.]

# IN THE COURT OF APPEALS OF OHIO

## TENThe APPELLATE DISTRICT

In re:  [C.C.S.],                                    :

[C.L.S.],                                              :               No. 15AP-884
                                                                    (C.P.C. No. 14JU07-8823)
              Petitioner-Appellant,          :

                                                                    (REGULAR CALENDAR)
v.                                                         :

Adoption by Gentle Care,                     :

              Respondent-Appellee.        :

---

# D E C I S I O N

## Rendered on February 4, 2016

---

*Steven E. Hillman*, **for appellant.**

*Tucker Ellis LLP*, *Jon W. Oebker*; **and** *A. Patrick Hamilton*, **for appellee Adoption by Gentle Care.**

---

**APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch.**

TYACK, J.

{¶ 1} Petitioner-appellant, C.L.S., appeals the decision and judgment of the Franklin County Court of Common Pleas to grant respondent-appellee, Adoption by Gentle Care's ("Gentle Care"), motion for involuntary dismissal under Civ.R. 41(B)(2) and to dismiss C.L.S.'s petition for a writ of habeas corpus.  C.L.S. seeks the return of the child, C.C.S., after signing a "Permanent Surrender Agreement" a few days after the child's birth on March 31, 2014.  The trial court found the permanent surrender to be valid and granted a motion for involuntary dismissal.  For the following reasons, we affirm the trial court's decision and judgment.

{¶ 2} Appellant, C.L.S. assigns four errors for our consideration:

[I.] The Petitioner did not have the capacity to contractually permanently surrender her newborn child due to duress, undue influence, or fraud and the cumulative affects [sic] of the physical limitations from surgery, hormonal dump and effects of narcotics prescribed for pain associated with surgery.

[II.] The trial court erred to the Appellant's prejudice by improperly excluding evidence of communications between Appellant and her domestic partner that would show how Appellant was coerced into surrendering her child.

[III.] The trial court erred in granting a "directed verdict" in a bench trial erred by not first determining whether evidence of substantial, probative value supports each element of the plaintiff's claims. If the plaintiff has indeed presented such evidence and the trial court nevertheless granted a "directed verdict" without weighing the evidence and determining the credibility of the underlined witnesses, then an appellate court cannot treat the "directed verdict" as a Civ.R. 41(B)(2) involuntary dismissal.

[IV.] The trial court erred in dismissing the petition for habeas corpus because the Appellee did not timely and adequately discuss the options available to the Appellant in lieu of surrendering the child as required by OAC: 5101:2-42-09(B).

### Facts and Procedural History

{¶ 3} The factual history of this case is well-documented in our prior decision, *In re C.C.S. v. Adoption by Gentle Care*, 10th Dist. No. 14AP-739, 2015-Ohio-2126, and the subsequent decision of the trial court, *In re* [C.C.S.], Franklin C.P. No. 14JU-8823 (Sept. 14, 2015). C.L.S. and her five children lived with J.G. beginning in 2008. J.G. worked to support the household while appellant stayed home and tended to the children. In 2013, C.L.S. became pregnant by an "old friend," S.L. In March 2014, J.G., who is not the father of any of C.L.S.'s five children, told C.L.S. that she could not bring the new baby into the home.

{¶ 4} On March 15, 2014, C.L.S. contacted Gentle Care, a licensed, private child placement agency. At the time she contacted Gentle Care, appellant was a 38-year old

high school graduate who had attended The Ohio State University and Columbus State Community College.

{¶ 5} On March 27, 2014, C.L.S. met with a Gentle Care social worker, Kelly Schumaker, at a Bob Evans restaurant. At the meeting, C.L.S. was provided with pamphlets and packets of information about adoption including information about birth parents' rights and options. Alternatives to surrender were also discussed as well as pre- and post-adoption options, temporary custody, and foster care. After the meeting, C.L.S. texted Ms. Schumaker and Ms. Schumaker texted that "it's completely up to you, it has to be your decision," to which C.L.S. responded later that night, "I know it's late but I want you to know I'm a hundred percent choosing adoption." (July 30, 2014 Tr. 54.)

{¶ 6} C.L.S. signed papers acknowledging that she knew her rights and obligations. She also selected a couple to adopt her child before giving birth to the child on March 31, 2014. C.L.S. did not request to see the child at the hospital and left the hospital the next day on April 1, 2014.

{¶ 7} On April 4, 2014, after waiting one day longer than the statutorily-required 72 hours, C.L.S. signed the permanent surrender agreement. C.L.S. made no request for counseling and affirmatively stated that no one was forcing her to go through with the adoption. The permanent surrender agreement also stated that, by signing, she was given the opportunity to ask questions and that she was surrendering the child voluntarily. C.L.S. also signed an "Affidavit of Relinquishment" which stated, "I have the right to seek the counsel of any attorney * * * I have the absolute right to refuse to place my child for adoption." (July 29, 2014 Tr. 44.)

{¶ 8} On April 13, 2014, C.L.S. told Ms. Schumaker that the decision to surrender the child had never been hers to make. She stated that her boyfriend, J.G., with whom she and her other five children were living, had wanted the adoption, and J.G. regretted asking her to allow the adoption. C.L.S. requested that the child be returned to her.

{¶ 9} C.L.S. petitioned the Franklin County Probate Court to revoke the permanent surrender agreement. Before a hearing was held on that petition, the prospective adoptive parents dismissed their adoption petition voluntarily and returned the child to Gentle Care. One reason for the dismissal was concern the prospective adoptive parents had about the lifelong ramifications of parenting a child whose biological

mother wanted the child returned.  Gentle Care refused to return the child to C.L.S., compelling C.L.S. to file for a writ of habeas corpus, thereby challenging the validity of the permanent surrender agreement.

{¶ 10} Before the trial court, C.L.S. claimed the permanent surrender was made involuntarily, as a result of duress, undue influence, misrepresentations, and failure of Gentle Care to provide the necessary information for C.L.S. to give a valid consent.

{¶ 11} The trial court heard many days of testimony. The permanent surrender agreement, the affidavit of relinquishment, and the recorded colloquy of the permanent surrender were all read into the record.  The trial court also heard testimony from C.L.S. and from a witness who testified about the personality of C.L.S.  The court also heard testimony from employees of Gentle Care and from the child's biological father.

{¶ 12} After C.L.S. had presented her case, Gentle Care moved for an involuntary dismissal under Civ.R. 41(B)(2).  On August 22, 2014, the trial court granted the motion for involuntary dismissal.  C.L.S. appealed to this court.

{¶ 13} On June 2, 2015, in a split decision, we found "[t]he trial court's entry does not inform us that it was able or permitted to enter a directed verdict for Gentle Care and involuntarily dismiss the matter pursuant to Civ.R. 41(B)(2) because the findings required to support such action do not exist in the court's judgment entry denying appellant's petition." *In re C.C.S.*, 10th Dist. No. 14AP-739, 2015-Ohio-2126, at ¶ 14.  The matter was remanded to the trial court to "explicate and weigh the circumstances and pressures it previously found" C.L.S. to have been under that allowed the trial court to grant an involuntary dismissal pursuant Civ.R. 41(B)(2).  *Id.* at ¶ 15.

{¶ 14} The trial court responded with a 35-page decision detailing both the facts of the case and the court's reasoning.  The trial court concluded that C.L.S. was not sufficiently credible and therefore did not meet her burden of proof for granting the requested habeas corpus.  The trial court concluded, after examining the law and the evidence presented in her case-in-chief, that C.L.S. really had a choice and the execution of the permanent surrender was the product of her freedom of exercising her will. (Sept. 14, 2015 Judgment Entry).  The trial court granted Gentle Care's motion for involuntary dismissal under Civ.R. 41(B)(2).  C.L.S. has timely appealed once again.

**Involuntary Dismissal Under Civ.R. 41(B)(2)**

{¶ 15} Involuntary dismissal under Civ.R. 41(B)(2) has been thoroughly addressed by this court:

> Civ.R. 41(B)(2) allows a trial court to determine the facts by weighing the evidence and resolving any conflicts therein. *Whitestone Co.* [*v. Stittsworth*, 10th Dist. No. 06AP-371, 2007-Ohio-233,] ¶ 13; *Sharaf* [*v. Yougman*, 10th Dist. No 02AP-1415, 2003-Ohio-4825,] ¶ 8. If, after evaluating the evidence, a trial court finds that the plaintiff has failed to meet her burden of proof, then the trial court may enter judgment in the defendant's favor. *Daugherty* [*v. Dune*, 10th Dist. No. 98AP-1580 (Dec. 30, 1999)]. Therefore, even if the plaintiff has presented evidence on each element of her claims, a trial court may still order a dismissal if it finds that the plaintiff's evidence is not persuasive or credible enough to satisfy her burden of proof. *Tillman* [*v. Watson*, 2nd Dist. No. 06-CA-10, 2007-Ohio-2429,] ¶ 11. An appellate court will not overturn a Civ.R. 41(B)(2) involuntary dismissal unless it is contrary to law or against the manifest weight of the evidence. *Whitestone Co.*, at ¶ 13; *Sharaf*, at ¶ 8.

*Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, ¶ 9 (10th Dist.).

{¶ 16} The trial court can grant a Civ.R. 41(B)(2) involuntary dismissal if it, in its role as trier of fact, finds that the plaintiff's evidence fails to satisfy the required burden of proof. *Id.* at ¶ 12. "Judgments supported by some competent, credible evidence going to all essential elements of the case will not by reversed by a reviewing court as being against the manifest weight of evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978). Further, " 'a reviewing court must be guided by the presumption that the findings of the trial court are correct, as the trial judge is best able to view the witnesses, observe their demeanor, gestures, voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Griffin v. Twin Valley Psychiatric Sys.*, 10th Dist. No. 02AP-744, 2003-Ohio-7024, quoting *Whiting v. Ohio Dept. of Mental Health*, 141 Ohio App.3d 198, 202 (2001).

{¶ 17} This court previously found that the trial court initially failed to explain its reasoning and consideration of the evidence that permitted it to grant the motion for involuntary dismissal. On remand, the trial court responded with a lengthy decision setting forth findings of fact and conclusions of law and also stating what evidence it found to be persuasive and credible.

### Standard to Invalidate a Permanent Surrender Agreement

{¶ 18} The central issue in this case is whether the permanent surrender agreement is valid. A permanent surrender agreement constitutes a valid contract if it is accepted and voluntarily entered into without fraud or misrepresentation. *In re Miller*, 61 Ohio St.2d 184, 189 (1980). A permanent surrender agreement constitutes prima facie evidence that the consent to an adoption is valid. *In re Baby Girl E.*, 10th Dist. No. 04AP-932, 2005-Ohio-3565, ¶ 26. "A natural parent's change of heart about an adoption is insufficient to revoke a parent's valid consent to the adoption." *Id.* However, if valid consent is lacking, the adoption decree violates due process of law, and giving effect to the decree then violates the public policy of Ohio. *Id.*; *State ex rel. Smith v. Smith*, 75 Ohio St.3d 418, 421 (1996).

{¶ 19} In determining the validity of consent and how that consent may have been affected by duress or undue influence, the court must determine "whether the party affected really had a choice; whether he had his freedom of exercising his will." *Morrow v. Family & Community Serv. of Catholic Charities, Inc.*, 28 Ohio St.3d 247, 251 (1986); *In re Baby Girl E.* at ¶ 26 ("[I]f a natural parent establishes by clear and convincing evidence that his or her 'consent' was the result of fraud, duress, or some other consent-vitiating factor, the 'consent' is invalid as not freely and voluntarily given and the adoption decree is void."). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). It is an intermediate standard, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. *Id.* Clear and convincing "does not mean clear and *unequivocal*." *Id.*, emphasis sic.

{¶ 20} C.L.S. executed a permanent surrender agreement on April 4, 2014 by affixing her signature and in the presence of witnesses. This is prima facie evidence of a valid consent. Therefore, C.L.S. was required to prove by clear and convincing evidence that the consent was not valid due to duress, fraud, or other factor. The trial court's thorough findings of fact and conclusions of law found that the consent was valid. We must not overturn this decision unless it is contrary to law or against the manifest weight of the evidence.

**C.L.S. Was Not Under Such Duress That She Could Not Consent**

{¶ 21} In her first assignment of error, C.L.S. alleges that she lacked the capacity to consent to the permanent surrender due to duress, undue influence, or fraud, and the cumulative effects of surgery, hormonal dump, and narcotics. We find the manifest weight of the evidence supports the trial court's finding that C.L.S. failed to present clear and convincing evidence that would overcome the prima facie evidence of her valid consent manifested in her signing the permanent surrender agreement. After we remanded this case, the trial court clearly showed how it weighed the evidence and what evidence it found credible. The trial court cured the error we found in its original August 22, 2014 decision.

{¶ 22} On appeal, C.L.S. does not challenge the legal standard applied or the validity of the evidence that was presented at trial. C.L.S. only asks that we look at the totality of the circumstances to come to a different conclusion than the trial court. C.L.S. argues on appeal that duress from her significant other, J.G., along with a combination of undue influence from Gentle Care, effects from surgery, the hormonal dump experienced after pregnancy, and the effects of narcotic pain prescriptions, rendered her unable to consent to a valid permanent surrender agreement. It is clear that the trial court fulfilled its role as trier of fact and found that C.L.S.'s evidence was not persuasive or credible enough to satisfy her burden of proof.

{¶ 23} There is ample evidence of a valid permanent surrender agreement. This evidence included the agreement itself, an audio recording of the colloquy that accompanied the agreement (which was played for the trial court), and the affidavit of relinquishment which stated many times the permanent, but non-mandatory nature of the surrender agreement. (July 29, 2014 Tr. 34-52.) This affidavit of relinquishment was read out loud, and C.L.S. answered questions about it, all of which was recorded as part of the colloquy which the court heard at trial.

{¶ 24} The trial court found that C.L.S. did in fact have a choice in the permanent surrender even though she claimed she was under duress from J.G., her significant other. (Sept. 14, 2015 Judgment Entry, 19). The profile of C.L.S. was not one of someone who was easily pressured. She was 38 and college educated. She was described as rather bold and not a pushover. *Id.* There was evidence of C.L.S.'s desire to pursue adoption through her contact with Gentle Care and meeting and discussing adoption ahead of giving birth.

C.L.S. was not rushed into making a decision, having weeks to decide after initially contacting Gentle Care. *Id.* at 20. There were also statements made by C.L.S., both before and after giving birth, that indicate it was her choice to go through with adoption. After meeting with a Gentle Care social worker, C.L.S. texted "I'm a hundred percent choosing adoption." (July 30, 2014 Tr. 54.) A hospital record indicated that C.L.S. was even more sure about her decision the next day after giving birth. (July 30, 2014 Tr. 74-76.)

{¶ 25} The trial court found that there was little doubt as to C.L.S.'s state of mind regarding the permanent surrender as the court heard C.L.S.'s own voice on the recorded colloquy. The trial court also found that evidence of a history of untruthfulness undercut C.L.S.'s claims that J.G. left her with no choice but to surrender the child. (Sept. 14, 2015 Judgment Entry, 22.) The trial court also noted that C.L.S. and her five children continued to live with J.G. even as she sought to void the permanent surrender. The trial court found that fact undercut the argument that J.G. was so adamant that this new child not live with him to cause C.L.S. such duress that she surrendered the child. C.L.S.'s arguments about being on pain medication and suffering a hormonal dump are also not persuasive as the doctor testifying was not the delivery doctor, was not at the hospital, did not see C.L.S. before she signed the permanent surrender agreement, and only spoke in generalities. (July 29, 2014 Tr. 98-115.) Ultimately, the trial court found that the evidence presented by C.L.S. was not sufficiently credible. (Sept. 14, 2015 Judgment Entry, 34.)

{¶ 26} The trial court found that C.L.S. had failed to prove by clear and convincing evidence that her consent to the permanent surrender agreement was not valid. We find this decision is supported by some competent and credible evidence going to all essential elements of the case.

{¶ 27} The first assignment of error is overruled.

### Testimony From J.G. Was Not Improperly Excluded

{¶ 28} In her second assignment of error, C.L.S. argues that the trial court improperly excluded evidence of a communication between C.L.S. and J.G., the man with whom she was living with. The trial court sustained an objection about this testimony. While not specific as to the grounds for the objection, it was likely made based on hearsay.

During trial, C.L.S was under direct examination and being asked when she first considered adoption. The entirety of the objection is as follows:

> A. I – I never considered adoption until March, the middle of March.
>
> Q. Why did you begin to consider it then?
>
> A. Because I was getting ready to give birth and my significant other told me that I had to choose –
>
> ATTORNEY OEBKER: Objection.
>
> ATTORNEY HAMILTON: Objection. Sorry.
>
> JUDGE LOUDEN: Sustain.
>
> A. – because I felt like I didn't have a choice.
>
> Q. You didn't have a choice to do what?
>
> A. Other than adoption at that day – that point.

(July 28, 2014 Tr. 145-46.)

{¶ 29} "The admission of evidence is generally within the sound discretion of the trial court, and a reviewing court may reverse only upon the showing of an abuse of that discretion." *Peters v. Ohio State Lottery Comm.*, 63 Ohio St.3d 296, 299 (1992). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 30} The trial court did not abuse its discretion in sustaining the objection. Counsel for C.L.S. did not argue at trial against it, or why the statement would not be considered hearsay. Further, there was no indication that C.L.S.'s significant other, J.G., was unavailable to testify.

{¶ 31} The second assignment of error is overruled.

### The Trial Court Did Not Grant a Directed Verdict

{¶ 32} In her third assignment of error, C.L.S. argues that the trial court erred in granting a directed verdict in a bench trial by not first determining whether evidence supports each element of the claim. This assertion is without merit. The trial court, in its second decision, on September 14, 2015 granted an involuntary dismissal. This is distinct

from the first decision when we found that the trial court could not enter an involuntary dismissal because the findings to support such action did not exist in the August 2014 judgment entry. *In re C.C.S.*, 10th Dist. No. 14AP-739, 2015-Ohio-2126.

{¶ 33} In our June 2, 2015 decision, we only discussed a directed verdict standard to determine if the trial court's decision could meet the more stringent standard of construing the evidence most strongly in favor of C.L.S, rather than the less rigorous standard for involuntary dismissal. *See Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842. "There is no prejudice if a trial court erroneously applies the Civ.R. 50(A) standard for directed verdict instead of the standard for involuntary dismissal under Civ.R. 41(B)(2) because the directed verdict standard is much more rigorous than the involuntary dismissal standard. * * * Satisfaction of the Civ.R. 50(A) standard implies satisfaction of the Civ.R. 41(B)(2) standard." *Whitestone Co. v. Stittsworth*, 10th Dist. No. 06AP-371, 2007-Ohio-233, ¶ 15; quoting *Fenley v. Athens County Genealogical Chapter*, 4th Dist. No. 97CA36 (May 28, 1998).

{¶ 34} We found that the trial court's September 14, 2015 judgment entry lacked the factual findings to grant an involuntary dismissal under Civ.R. 41(B)(2) and therefore examined if it could pass a directed verdict standard. *In re C.C.S.* Appellant's counsel does not recognize this distinction in his brief and instead alleges factual errors committed by the trial court.

{¶ 35} The third assignment of error is overruled.

### Options Other Than Adoption Where Adequately Discussed

{¶ 36} In her fourth assignment of error, C.L.S. argues that the petition for habeas corpus should have been granted because Gentle Care failed to discuss all the options available to C.L.S. in lieu of surrendering the child as required by the Ohio Administrative Code. Ohio Adm.Code 5101:2-42-09 states:

> (B) At least seventy-two hours prior to the PCSA or PCPA execution of the JFS 01666, the assessor shall meet with the parents, guardian or other persons having custody of the child to do the following:
>
> (1) Discuss with the parents, guardian, or persons having custody of the child other options available in lieu of surrendering the child.

The trial court stated that "[t]here was, in fact, sufficient discussion between [C.L.S.] and [Gentle Care] staff to meet the 'discussion' element of the permanent surrender." (Sept. 14, 2015 Judgment Entry, 26.) The trial court found Gentle Care did discuss the surrender options as required by Ohio Adm.Code 5101:2-42-09(B)(1). (Sept. 14, 2015 Judgment Entry, 27.) This finding of fact is supported by competent and credible evidence in the record.

{¶ 37} On March 27, 2014, C.L.S. met with a Gentle Care social worker, Kelly Schumaker, at a Bob Evans restaurant for about an hour. (July 28, 2014 Tr. 137.) At the meeting, C.L.S. was provided with pamphlets and packets of information about adoption including information about birth parent's rights and options. (July 31, 2014 Tr. 127-28.) Alternatives to surrender were also discussed as well as pre- and post-adoption options, temporary custody with an agency, and foster care. This information was also contained in a pamphlet that was given to C.L.S. at this meeting, including the option to place the child with a friend or non-relative temporarily or permanently. (July 31, 2014 Tr. 87-88.)

{¶ 38} Further, during the colloquy when the permanent surrender was signed, C.L.S. was asked if she understood her options:

> Q. And how long have you been considering adoption?
>
> A. For approximately a month.
>
> Q. Okay.
>
> A. Three, four weeks.
>
> Q. Three to four weeks? Do you feel like that's a long enough time to consider all of your options?
>
> A. Yes.
>
> Q. And you understand that you will be signing a permanent surrender of child document and that this is not a temporary custody form?
>
> A. Yes.
>
> Q. And do you understand that you're not obligated to proceed with surrender today, and that baby could be placed in foster care or discharged to you to give you more time?

A. I understand.

Q. Okay. Would you like to consider any of there options?

A. No.

(July 29, 2014 Tr. 36-37). Ample evidence exists to support the trial court's conclusion that all the options of what could be done with the child were discussed with C.L.S.

{¶ 39} The fourth assignment of error is overruled.

### It is Irrelevant That J.G. Was Not a Party to Permanent Surrender

{¶ 40} The trial court also found an independent reason why duress from J.G. could not void C.L.S.'s consent; stating that under Ohio law the duress to void a contract must come from a party to that contract. The trial court quoted:

> To avoid a contract on the basis of duress, a party must prove coercion by the other party to the contract. It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party.

*Blodgett v. Blodgett*, 49 Ohio St.3d 243 (1990), at paragraph one of syllabus.

{¶ 41} Whether this is a correct statement of Ohio law in the context of a permanent surrender agreement is not a question that needs to be addressed here. We have already found that trial court's judgment that C.L.S. really had a choice in consenting is supported by the manifest weight of the evidence. Further, such a question pits the public policy that duress to invalidate a contract must originate with a contract party against the policy that birth parents must not be in such duress that it overcomes their freedom to exercise their will. One can only speculate as to which policy takes precedence in other circumstances that may be driven by other facts.

### Conclusion

{¶ 42} Having found that C.L.S. really had a choice, we will not invalidate the permanent surrender agreement. The evidence presented by C.L.S at trial is insufficient to overcome the prima facie evidence of the signed permanent surrender agreement. Essentially this case was a question of fact, not law. The trial court, as the fact finder, made its determination after a lengthy trial that C.L.S. failed to present clear and convincing evidence that the surrender agreement is invalid as a result of duress or other factors. It is a great misfortune therefore that this case has resulted in a newborn child living in foster care since birth for the last 21 months.

{¶ 43} Having overruled the four assignments of error, the judgment of the trial court is affirmed.

*Judgment affirmed.*

KLATT and BRUNNER, JJ., concur.

––––––––––––––